ATHOL SAVINGS BANK *vs.* MINNIE K. BENNETT & another.
AMERICAN HOUSE CORPORATION *vs.* ATHOL SAVINGS BANK & others.

Franklin.    September 21, 1909. — October 29, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Pledge. Corporation,* Transfer of shares, Attachment of shares. *Attachment. Execution. Estoppel,* By record. *Pledge. Equity Pleading and Practice,* Demurrer, Decree, Taking *pro confesso. Equity Jurisdiction,* Interpleader, Subrogation.

Under St. 1903, c. 437, § 28, if a *bona fide* pledgee of shares in a Massachusetts corporation, to whom the shareholder has delivered the certificate of stock representing the shares with a power of attorney to transfer them as security for a note, makes a further loan of money to the shareholder upon a second note with the agreement that the lender shall hold the shares of stock, for which he already has the certificate, as security for the new loan as well as for the former one, this creates a valid pledge for the second loan which is good against an attempted attachment by a creditor of the pledgor and against an attempted sale on execution by such creditor.

The provisions of R. L. c. 167, §§ 69, 70, in regard to the attachment of personal property which is subject to a mortgage, pledge or lien, apply only where there is an attachment of goods by actual seizure, and have no application to an attachment of shares of stock in a corporation.

If a *bona fide* pledgee of shares in a Massachusetts corporation, to whom the shareholder has delivered the certificate of stock representing the shares with a power of attorney to transfer them as security for a note, makes a further loan of money to the shareholder upon a second note with the agreement that the lender shall hold the shares of stock, for which he already has the certificate, as security for the new note as well as for the first one, and if, upon the advertisement of an attempted sale on execution of these shares by a judgment creditor of the shareholder, the pledgee files a bill in equity to enjoin the sale, in which he alleges that he holds the shares as security for the first note and does not mention the second note, but does not allege that the first note is the only one for which he holds the shares as security, this does not estop the pledgee, in a suit in equity brought against him later by the same judgment creditor, after such creditor has paid the amount due on the first note and thus has acquired by subrogation the rights of the pledgee as to that note, to insist upon his right to hold the shares as security for the second note.

The provisions of St. 1903, c. 437, § 28, that "a pledgee of stock transferred as collateral security shall be entitled to a new certificate if the instrument of transfer substantially describes the debt or duty which is intended to be secured thereby," and that "such new certificate shall express on its face that it is held as collateral security, and the name of the pledgor shall be stated thereon, who alone shall be liable as a stockholder, and entitled to vote thereon," were enacted to enable a pledgee to procure a certificate in his own name without assuming the liabilities of a stockholder, and do not deprive a *bona fide* pledgee for value, to whom a certificate of shares in a Massachusetts corporation has been delivered with a power of attorney to transfer the shares, but without any description of the debt which is intended to be secured thereby, of his right to receive a new certificate as a stockholder with full liabilities in accordance with the transfer authorized by the power of attorney.

Upon a bill of interpleader, after an interlocutory decree has been made ordering all the defendants to interplead, one defendant cannot demur to the answer of another.

In a suit of interpleader by a Massachusetts corporation to determine whether a certificate for certain of its shares should be issued to a savings bank, which claimed them as a judgment creditor of the shareholder and had attempted to take them on execution, or to one who claimed them as pledgee, it appeared that the alleged pledgee held the shares rightfully as security for the payment of a certain note and that the savings bank had a right to redeem them from the pledge, and a decree was made that the pledgee should hold the shares as collateral security for the note unless the savings bank, within ten days after final determination of the case, should pay to the pledgee such sum as was due on the note. *Held*, that, although the decree was right as to the title of the pledgee and the right of the savings bank to redeem, yet the savings bank was under no obligation to redeem the shares from the pledgee, and the decree should provide for the rights of the parties in case it should not elect to do so.

How shares of the capital stock of Massachusetts corporations can be attached, levied upon or otherwise taken in payment of a debt due from their owner since the enactment of St. 1884, c. 229, now incorporated in St. 1903, c. 437, § 28, if no change is made by the Legislature in R. L. c. 177, §§ 46-51, is left an open question.

Whether the equity of redemption in shares of stock subject to a pledge can be attached on mesne process in an action at law, here was mentioned as a question not passed upon by the court.

In a suit of interpleader brought by a corporation to determine to whom a certificate for certain of its shares should be issued, where the defendant in whose name the shares stand enters no appearance and the bill alleges that he "claims no interest in said stock or certificate save as such are subject to the claims of the other defendants," respectively a judgment creditor and a pledgee, if no decree has been entered that the bill has been taken *pro confesso* against such defendant, the fact thus alleged is not established as against him.

In a suit of interpleader brought by a corporation to determine whether a certificate for certain of its shares should be issued to a savings bank, which as a judgment creditor had attempted to sell the shares on execution and to purchase them at the execution sale, or to one who claimed them as pledgee, the person, in whose name the shares stood and who was the judgment debtor and pledgor, also was made a defendant but entered no appearance. An interlocutory decree ordered that "the defendants named in the plaintiff's bill" should interplead. The defendant stockholder of record did nothing in pursuance of

that decree. No order was made that the bill should be taken *pro confesso* against him, but a final decree was entered in favor of the pledgee and the savings bank, which was in effect a decree that the right of the defendant stockholder of record to redeem the shares from the pledge had passed to the savings bank as purchaser at the execution sale. The defendant stockholder of record took no appeal from that decree. *Held,* that the final decree stood as against the defendant stockholder of record, even if it was erroneous, and left the savings bank the general owner of the shares subject to the rights of the pledgee.

Where a stockholder in a Massachusetts corporation lawfully has pledged his stock by delivering to the pledgee the certificate for his shares and a power of attorney to transfer them, as security for two notes made by him to the pledgee at different times, and a judgment creditor of the stockholder, who has attempted to take the shares on execution, pays to the pledgee the amount due on the first of the two notes, such judgment creditor acquires by subrogation all the rights of the pledgee as the holder of the first note, so that the pledgee to enforce his lien for the payment of the second note must redeem the shares by paying to the judgment creditor the amount of the first note with interest.

LORING, J. The first of these two suits is a bill in equity brought by the Athol Savings Bank to enjoin the defendants Minnie K. Bennett and Charles N. Stoddard from assigning a certificate for fifty shares in the capital stock of the American House Corporation. The savings bank alleged that it had acquired these shares by purchase at an execution sale on a judgment against the owner of them, one Charles F. Packard.

The second is a bill of interpleader by the American House Corporation setting forth that the savings bank and said Bennett each claims to be the owner of the said fifty shares, and each demands a new certificate therefor.

The evidence in the first suit was taken by a commissioner, and the second suit was submitted upon that evidence and the findings of fact which had been made in the first suit.*

In the first suit the savings bank prayed in addition to the relief stated above that the defendant Bennett should be ordered to deliver to it the certificate for the fifty shares here in question. This was denied at the close of the hearing, and that case was retained on the plaintiff's prayer asking that Mrs. Bennett should be enjoined from transferring the shares to abide the decision in the interpleader suit which was then pending.

It was found in the Superior Court that on July 1, 1899, the defendant Minnie K. Bennett lent Charles F. Packard $5,000 on

---

* The first suit was heard in the Superior Court by *Hitchcock,* J., a commissioner being appointed under Equity Rule 35 to take the evidence. The interpleader suit was heard by *King,* J.

the security of fifty shares of the American House Corporation, alleged to be a corporation established under the laws of the Commonwealth, and that Packard, who was then the owner of fifty shares in that corporation, delivered to her a certificate for them and a power of attorney to transfer the same to Mrs. Bennett; that later on (on May 10, 1904) she lent Packard, together with W. G. and H. D. Packard, another $5,000 on the agreement that she should hold the fifty shares of stock the certificate for which was then in her possession, as security for this as well as for the former loan. Mrs. Bennett still holds the certificate. No transfer of the shares has been made on the books of the corporation.

On January 5, 1907, these fifty shares of stock were attached (or an attempt was made to attach them) under a special precept issued in an action brought by the savings bank against Charles F. Packard. The savings bank recovered judgment in that action in the sum of $3,620.79. Execution was taken out, these shares were seized and taken on execution, and advertised to be sold on September 3, 1907. On that day a bill in equity was brought by Mr. Stoddard in behalf of Mrs. Bennett, alleging that these fifty shares were held by her as security for the loan of July 1, 1899. A temporary injunction was issued and the sale was postponed until September 17. On that day the savings bank paid Mr. Stoddard the amount due on that note, amounting to $5,053.36, and the injunction was dissolved. The sale then proceeded and the stock was bought in by the savings bank for $6,000. An attested copy of the execution and the return thereon was duly left with the officer of the corporation within fourteen days and a demand was made for a new certificate. We assume that this action was taken under R. L. c. 177, § 50.

It was found as a fact that the bill brought by Mr. Stoddard in behalf of Mrs. Bennett was brought without her knowledge, while she was ill in Vermont, at the request of Charles F. Packard, who on the day originally fixed for the execution sale, brought to Mr. Stoddard the note of July 1, 1899, the certificate and the power of attorney, with a request that he should protect Mrs. Bennett's interest in the matter. Packard told Mr. Stoddard at that time that there was another note which he had

not found.   But it is not stated in the findings made in the Superior Court that he told him that the other note was secured by the shares of stock.   Charles F. Packard had access to Mrs. Bennett's papers and was her agent in collecting certain moneys due her, but it was found by the Superior Court that " he was not her agent for any other purpose."   It was further found in the Superior Court that Mr. Stoddard deposited the $5,053.36 in the Produce National Bank to Mrs. Bennett's credit, but that it never had been used by her, " and she offers to repay the same to the plaintiff."

It is not necessary to consider whether on this evidence Mrs. Bennett was bound by what Mr. Stoddard did in bringing this bill in equity in her behalf and in receiving payment of the first note dated July 1, 1899.   Those questions are put at rest by the allegation made by Mrs. Bennett in her answer to the interpleader suit.   In that answer Mrs. Bennett alleges that " she filed " the bill in equity filed in her behalf by Mr. Stoddard ; and although there is no express allegation that she received the $5,053.36 received by Mr. Stoddard from the defendant savings bank in payment of the first note, that follows from the fact that " she filed " the bill in equity.   For this payment was the sole object sought in filing that bill.

By force of St. 1903, c. 437, § 28, Mrs. Bennett has a right to hold these shares of stock as security for the note of May 10, 1904, which has not been paid, unless she lost that right by what was done in receiving payment of the other note.   The law is fully stated in *Clews* v. *Friedman*, 182 Mass. 555, and need not be repeated here.

The savings bank contends that the demand made in behalf of Mrs. Bennett in the bill in equity was a demand under R. L. c. 167, §§ 69, 70, and that on payment of the $5,053.36 Mrs. Bennett's pledge was wholly dissolved by force of § 69.   But it is settled that R. L. c. 167, §§ 69, 70, apply only where there is an attachment of goods by actual seizure of them.   *Putnam* v. *Cushing*, 10 Gray, 334.   They are not applicable in case of an attachment of shares of stock, and for that reason it is not necessary to point out that the bill in equity did not purport to be a demand under R. L. c. 167, §§ 69, 70.

The next contention of the savings bank is that by setting up

in the bill in equity (brought in her behalf by Mr. Stoddard) the note of July 1, 1899, and by not setting up in it the note of May 10, 1904, Mrs. Bennett is estopped to insist upon her right to hold these shares of stock as security for the second note. But there was no allegation in that bill that the note of July 1, 1899, was the only note secured by these shares of stock, and the savings bank, by paying that note, has suffered no damage. It is now subrogated to the rights of a holder of that note.

Of course Mrs. Bennett's right to hold these shares as security for this note is not *res judicata*, as has been argued by counsel for the savings bank. That issue was not raised or tried in that bill in equity.

The last contention is that the following provision of St. 1903, c. 437, § 28, is fatal to her claim, to wit: " A pledgee of stock transferred as collateral security shall be entitled to a new certificate if the instrument of transfer substantially describes the debt or duty which is intended to be secured thereby." The argument in support of this contention (as we understand it) is that since the debt for which the shares here in question were pledged is not stated in the power of attorney, Mrs. Bennett cannot have a new certificate and therefore has no title to the shares. It would be enough to say of this that in deciding the question of ownership it is not necessary to decide Mrs. Bennett's right to a new certificate. The provision of the same section stating that such a delivery of a certificate is a sufficient delivery against all persons has been held to give one in Mrs. Bennett's position a good title as against a subsequent attaching creditor. *Clews* v. *Friedman*, 182 Mass. 555. But the complete answer is that Mrs. Bennett is entitled to a new certificate in accordance with the transfer authorized in the power of attorney, in which case she assumes as against the corporation all the liabilities of a stockholder. The provision of St. 1903, c. 437, § 28, invoked by the savings bank was enacted to enable a pledgee to procure a certificate in his own name without assuming the liabilities of a stockholder, as was explained by this court in *Holyoke Bank* v. *Burnham*, 11 Cush. 183, in reference to St. 1838, c. 98, § 3, the original act of which this provision of St. 1903, c. 437, § 28, is the present embodiment.

The demurrer to Mrs. Bennett's answer was properly disre-

garded by the Superior Court. A demurrer lies to a bill of interpleader if the facts therein alleged do not entitle the plaintiff to have the defendants or some of them interplead. But the demurrer filed by the savings bank was a demurrer to Mrs. Bennett's answer, and was filed after an interlocutory decree directing that all parties defendant should interplead. If one of the parties ordered to interplead does not care to controvert the facts set forth in his opponent's answer, his course is to set down the cause for hearing on his opponent's answer, leaving his opponent to set it down on his own answer or to take issue upon the facts therein stated, as his opponent sees fit. The savings bank had no right to demur to Mrs. Bennett's answer, and for that reason it was properly disregarded in the Superior Court. It is well to state however that there is nothing of any consequence in this demurrer which has not been considered in this opinion.

The only question in these cases is as to the terms of the decree in the interpleader suit. The decree entered in the Superior Court was that Mrs Bennett should hold the shares as collateral security for the note of May 10, 1904, unless the Athol Savings Bank should within ten days after the final determination of this cause pay to her such sum as is due thereon.

The decree is right in holding that Mrs. Bennett's title as pledgee to secure payment of the note of May 10, 1904, is good, and that the savings bank has a right to redeem from her. But the savings bank is under no obligation to redeem the shares from the pledge of them to secure payment of the note of May 10, 1904, and the decree should provide for the rights of the parties in case it does not elect to do so.

It is not necessary in deciding these suits to determine how shares in the capital stock of corporations can be attached, levied upon or otherwise taken in payment of a debt due from the owner of them at the present time, that is to say, since the enactment of St. 1884, c. 229. It is plain that since the enactment of that statute, (now re-enacted in St. 1903, c. 437, § 28,) the system for the attachment of shares and for taking them on execution set forth in R. L. c. 167, §§ 66, 68, and c. 177, § 50, respectively, cannot be literally carried out and applied. R. L. c. 177, § 50, provides that the purchaser of shares at an execu-

tion sale shall be entitled to a certificate for them on exhibiting an attested copy of the execution and of the return thereon to the corporation, without producing or accounting for the outstanding certificate for them originally held by the debtor who owned the shares levied upon. When the right of the creditor attaching shares in a corporation or taking them on execution depended upon the fact that the shares attached or levied upon stood in the name of the debtor on the transfer books of the corporation, there was no objection to that provision and no difficulty in carrying it into effect. Before St. 1881, c. 302, the rights acquired by a creditor who attached shares of stock or took them on execution were fixed by the books of the corporation when the shares were shares transferable on the books of the corporation. This provision was extended to all corporations by St. 1881, c. 302, with the proviso that a transfer recorded within ten days of its date should take effect from that time. But this was changed by St. 1884, c. 229. That act gave to the holder of the certificate a good title to the shares and stopped there. That is to say, no change was made in what is now R. L. c. 177, § 50, providing that the corporation should give a certificate to the purchaser at an execution sale without his producing or accounting for the outstanding certificate originally issued to his debtor. The change made by St. 1884, c. 229, as to the title of the holder of the certificate made necessary a corresponding change in the effect of an execution sale. How the matter will be dealt with by the court if the necessary change in R. L. c. 177, § 50, is not made by the Legislature we do not find it necessary now to decide.

There is another matter which we do not find it necessary to decide. The savings bank in its action against Packard attached as his these shares, not the equity of redeeming them. All that Packard then had was an equity of redeeming these shares from the two notes held by Mrs. Bennett. In the first place, the general rule is that in the absence of a statute personal property subject to pledge cannot be attached or taken on execution. *Badlam* v. *Tucker*, 1 Pick. 389. *Lyon* v. *Coburn*, 1 Cush. 278. See also *Jenness* v. *Shrieves*, 188 Mass. 70, where the history of the matter is stated. In the second place, if an equity in shares of stock can be attached on mesne process in an action at law

(which we do not intimate), the savings bank seems to have levied on these shares, not on the equity of redeeming them, and to have undertaken to sell the shares, not the equity of redeeming them, and the sheriff undertook to pay the note bought by the savings bank out of the proceeds of the sale and apply the balance on the execution. It would seem that the sheriff could sell only what he took by his levy. It is hard to see how he could sell (as he undertook to do) the shares and pay the note for which they were pledged out of the proceeds of the execution sale, when all that he could get by a levy was Packard's equity of redemption from the note so paid and from the other note held by Mrs. Bennett.

But as we have said we do not find it necessary to decide these questions. Charles F. Packard was one of the defendants in the interpleader suit. No appearance was entered for him, and it is alleged in the bill of complaint that he "claims no interest in said stock or certificate save such as are subject to the claims of the other defendants." But no decree has been entered taking the bill *pro confesso* against him. It follows that that allegation of fact was not established as against the defendant Packard.

The interlocutory decree provided that " the defendants named in the plaintiff's bill shall interplead." The defendant Packard did nothing in pursuance of that decree, and a final decree has been entered in favor of Mrs. Bennett and the savings bank alone. From that decree no appeal has been taken by Charles F. Packard. The decree is in effect a decree that Charles F. Packard's right to the shares has passed to the savings bank as purchaser at the execution sale, and no appeal having been taken by him from that decree, it stands as against Packard, even if it be erroneous. As against Packard that leaves the savings bank as the owner subject to the rights of Mrs. Bennett as holder of the outstanding certificate.

We are of opinion that the final decree should be modified.

The savings bank is now, in equity at least, the holder of the note of July 1, 1899, both as against the maker and as against Mrs. Bennett, who originally had and still has a second lien on these shares as security for the note of May 10, 1904. As holder of the note of July 1, 1899, the savings bank is in equity

subrogated to the lien which Mrs. Bennett originally had on those shares to secure payment of that note.

The result is that (1) the savings bank as holder of the note of July 1, 1899, has a first lien in equity on these shares to secure the payment of the note of July 1, 1899; and if Mrs. Bennett, as holder of the second lien on these shares, wishes to redeem from the savings bank as holder of the first lien to secure payment of the note of July 1, 1899, she must pay that note with interest; (2) Mrs. Bennett has a second lien on these shares to secure the payment of the note of May 10, 1904, and if the savings bank, as the owner of the right of redeeming from this lien which Packard originally had, wishes to redeem, it must pay that note with interest; and in case Mrs. Bennett has redeemed from the first note before the savings bank redeems from the second, it must pay both notes with interest; and (lastly) the savings bank now has the interest which C. F. Packard originally had, to wit, a right to redeem from both notes.

The decree in the interpleader suit should be modified accordingly. The decree in the suit brought by the savings bank must be affirmed.                                         *So ordered.*

*W. A. Davenport,* for the Athol Savings Bank.

*D. Malone,* (*C. N. Stoddard* with him,) for Minnie K. Bennett.

*F. L. Greene,* for the American House Corporation, did not care to be heard.