Lewis Parkhurst & others, executors, *vs.* William F. Almy
& others.

Suffolk.    January 14, 1915. — September 22, 1915.

Present: Rugg, C. J., Loring, De Courcy, & Crosby, JJ.

*Equity Jurisdiction,* To reach and apply shares of corporate stock, To reach and
apply specific chattels to satisfy decree in equity.  *Corporation,* Equitable at-
tachment of shares.  *Uniform Stock Transfer Act.*

In a suit in equity by a judgment creditor to reach and apply to the payment of
his judgment shares of corporate stock standing in the name of his debtor, the
court has no power to order the corporation to issue to a special master new
shares of stock equal to those standing in the name of the debtor, which may
result in an over-issue of the stock of the corporation by reason of a transfer
of the debtor's certificate representing the shares to a *bona fide* purchaser for
value.

The judgment creditor in such a case must procure an equal number of shares of
the same stock from an outside source and place them in trust to be furnished
to the corporation in case an issue of shares to a *bona fide* purchaser for value
shall be required before he has a right to ask for an order to the corporation to
issue new shares to a special master to be sold by the master for application
of the proceeds to the creditor's judgment or decree.

In the present case, where the shares of stock had been issued to the debtor before
the passage of the uniform stock transfer act (St. 1910, c. 171), it was *said,* that,
if that statute was applicable to the case, which was not passed upon, the case
was covered by the provision of § 13, that, "Except where a certificate is lost
or destroyed, such corporation shall not be compelled to issue a new certificate
for the stock until the old certificate is surrendered to it."

Since the repeal of R. L. c. 177, §§ 46–51, by St. 1910, c. 531, shares of the capital
stock of corporations cannot be levied upon at law, and one, who previously
has obtained a judgment or decree ordering the payment of money to him by
a debtor who is a shareholder in a corporation, can maintain a suit in equity to
reach and apply to the payment of the debt to him the shares of stock of the
principal defendant which cannot be taken on execution at law without making
personal service of process upon the principal defendant against whom the
judgment or decree was obtained before the filing of the bill.

In the present suit in equity it was assumed that the parties acted on the
supposition that there was jurisdiction in equity against a certain defendant,
which was a storage warehouse company, "to reach and apply specific chattels
entrusted to it by the principal defendant because an action at law cannot be
brought to enforce a decree in equity."

Bill in equity, filed in the Supreme Judicial Court on De-
cember 22, 1913, by Edwin Ginn of Winchester, and after his

death prosecuted by the executors of his will, against William F. Almy and Lillian W. Almy, and the American Linen Company, the Granite Mills, the Sagamore Manufacturing Company, the Merchants Manufacturing Company, and the Pocasset Manufacturing Company, each a manufacturing corporation, and the Boston Storage Warehouse Company, a corporation, alleging that the original plaintiff on July 19, 1912, "recovered judgment" against the defendant William F. Almy in the sum of $292,420.72 and "a final decree" against the defendant Lillian W. Almy ordering her to pay the original plaintiff the sum of $100,-000; praying for an injunction restraining the defendant manufacturing corporations from transferring any shares of stock standing in the names of the defendants Almy or either of them, and that such shares of stock might be ordered to be sold and the proceeds applied to the payment of the plaintiffs' judgment and claims against the defendants Almy; also that any property belonging to the defendants Almy in the warehouse of the defendant Boston Storage Warehouse Company might be ordered to be sold and the proceeds likewise applied; and for further relief.

The case came on to be heard before *Sheldon, J.,* on a motion by the plaintiffs for a decree of sale or other proper application of the property of the defendants Almy, one or both, to the satisfaction of the judgments referred to in the decree annexed to the plaintiffs' bill. The counsel for the defendant manufacturing corporations appeared and objected that the court was without power to order the issuing of new certificates of the stocks of the respective corporations standing in the name of the defendant William F. Almy, and a sale or other application of such stocks for the purpose of satisfying, *pro tanto,* the plaintiffs' judgment, unless and until the original certificates of stock standing in the name of the defendant William F. Almy were produced and surrendered. The single justice was of the opinion, in the light of the facts, that the power of the court to enter this decree should be determined by the full court before further proceeedings were had.

The justice found that the facts were as recited in a draft for an interlocutory decree submitted by the plaintiffs, a copy of which was annexed to the report and made a part of it by reference, and that the decree was a proper one to be entered, if the court had

power to enter such a decree. The proposed decree is described sufficiently in the opinion.

The justice accordingly reported the case for determination by the full court upon the bill, the answers and the draft for a decree. Such a decree was to be entered if the court had power to enter it; otherwise, the case was to be disposed of as justice and equity might require.

*G. W. Anderson,* for the plaintiffs.

*A. J. Jennings,* for the defendants.

LORING, J. A corporation has no right to make an over-issue of its capital stock, and a court has no power to give it a right to do so. A decree in the form set forth in the report seems to undertake to proceed upon the basis that it has such a right in providing that upon the issue of certificates to a special master in lieu of the certificates now standing in the name of William F. Almy "such corporations shall be discharged and released from all liability by reason of the outstanding certificates in the name of said William F. Almy," provided the plaintiffs give to each of the corporations a bond "conditioned to hold such corporations harmless from all claims of any person or corporation establishing by and through the outstanding certificates in the name of William F. Almy a title legally and equitably paramount to the title obtained by the purchaser of the certificates sold by the special master hereunder."

If it were established that Almy was now the owner of the shares which stand on the books of the corporation in his name, and also that no one could become entitled to them hereafter, there would be no objection to the clause in the decree which provides that upon the issue of certificates to the special master in lieu of the certificates now outstanding in the name of William F. Almy, "such corporations shall be discharged and released from all liability by reason of the outstanding certificates in the name of said William F. Almy." But neither one of these two propositions is established. If the certificates for these shares have been transferred already to a *bona fide* purchaser for value without notice the title to the shares is in the transferee of these certificates. *Athol Savings Bank* v. *Bennett,* 203 Mass. 480. *Clews* v. *Friedman,* 182 Mass. 555. Even if the title to these shares is now in Almy, it would pass from him if certificates for these shares

hereafter should be transferred by him to a *bona fide* purchaser for value without notice. *Athol Savings Bank* v. *Bennett, Clews* v. *Friedman, supra.*

As we construe the decree it (in effect) takes away these shares from the true owners of them (in case the certificates for them already have been or shall be hereafter transferred by Almy to a *bona fide* purchaser for value without notice) and it substitutes for the shares rights of action against the corporations. But that is something which the court has no power to do. A court has no power to take away from the owner his property in shares in the capital stock of a corporation and substitute for that property a right of action against the corporation. It has no more power to take away shares belonging to a *bona fide* purchaser of Almy's certificates on substituting therefor a right of action against the corporation (even although the right of action is made good by a bond with sufficient sureties) than it has to take away from the owner of them his property in other shares in the capital stock of a corporation. If authority for this proposition is needed it may be found in *Pratt* v. *Taunton Copper Co.* 123 Mass. 110, and *Machinists' National Bank* v. *Field,* 126 Mass. 345. These are in effect decisions for that proposition. In these cases certificates for shares had been stolen from the owner and surrendered to the corporations with forged transfers of the shares. Thereupon the corporations had issued new certificates for the shares and these new certificates had come into the hands of *bona fide* purchasers for value. It was contended under these circumstances that the transferee of the new certificates, who had paid his money on the faith of these new certificates, was the owner of the shares and that the original owner of the shares had ceased to be the owner of them. But, in spite of the fact that the certificates formerly held by the original owner had been surrendered to the corporations and in fact cancelled, it was held by this court that the original owner continued to be the owner of the shares on the ground (above stated) that the corporation no more could deprive the original owner of his title to these shares than it could deprive any other holder of shares of his ownership in shares of the capital stock of the corporation.

How then can a creditor of a holder of shares in the capital stock of a corporation reach and apply in satisfaction of the

debt due to him the property of his debtor in shares standing in the debtor's name on the books of the corporation? If the creditor should procure certificates for an equal number of shares and should put these certificates in trust to be surrendered to the corporation in case it should turn out that the certificates standing in the debtor's name on the books of the corporation already had or thereafter should come to the hands of a *bona fide* transferee for value, objection to a possible over-issue of its capital stock by the corporation and the objection that the shares standing in the debtor's name might not now, or (if now) might not thereafter be the property of the debtor, would be avoided.

In the ordinary case it would seem to be possible for the creditor to procure shares to be thus put in trust by borrowing from an owner the necessary number of shares in the capital stock of the corporation. If the creditor should borrow a like number of shares and should hypothecate them for the protection of the corporation and a possible purchaser of the debtor's certificates, the course of proceedings would be as follows: New certificates for the debtor's shares would be issued to the special master, and the special master would then sell them, the proceeds being applied to the debt owed by the debtor to the creditor. At the sale by the special master the creditor is safe in bidding (up to the amount of the debt due him from the debtor) for the shares sold by the master, because the money paid by the creditor to the master is immediately returned by the master to the creditor. For that reason it would seem to be possible for the creditor to procure by borrowing them the shares which have to be put in trust before the certificates are issued to the special master to protect the corporation and possible transferees without notice of the debtor's certificates. After the creditor has bought in the shares sold by the commissioner, he can return the shares bought in satisfaction of the shares borrowed. After this has been done the creditor has the proceeds of the sale of the certificates issued to the master. In addition he has the shares hypothecated for the indemnity of the corporation and the possible *bona fide* purchaser of the debtor's certificates subject to that hypothecation. If ultimately it turns out that no transfer to a *bona fide* purchaser of the debtor's certificates has taken place the shares hypothecated for the protection of the corporation and the possible *bona fide*

transferee of the debtor's certificates belong to the creditor absolutely. The net result of the whole transaction in that event is that the creditor ultimately gets the proceeds of the sale of the debtor's shares in the corporation. If, on the other hand, there is a transfer of the debtor's certificates to a *bona fide* purchaser for value without notice, and the shares hypothecated for the protection of the corporation and the *bona fide* purchaser of the debtor's certificates are applied to that purpose, the result is that the creditor gets nothing. And in that event it is right that he should get nothing, for in that event the shares sold were not the shares of the debtor but were the shares of the transferee for value without notice of the debtor's certificates.

It is found as a fact in the case at bar that the shares in the capital stock of the corporations in which Almy owns shares and which the plaintiff seeks to reach and apply "are commonly bought and sold at private sale, and sometimes at public sale, in Fall River and elsewhere." This fact affords in the case at bar another way in which the plaintiff can obtain shares to be put in trust for the protection of the corporations and possible transferees without notice of Almy's certificates.

We have not found it necessary to come to a conclusion upon the question whether the uniform stock transfer act (St. 1910, c. 171) does or does not govern the decision which is now made. The defendant corporations have insisted that in spite of the fact that the certificates now held by Almy were issued before the date of the act, § 23 does not take this case out of that act because the certificates which by the terms of the decree were to be issued to the special master are issued under the act. If the case now before us is covered by the act, the putting in trust of an equal number of shares to be surrendered in case Almy's certificates already have or hereafter shall come to the hands of a *bona fide* purchaser for value is equivalent to surrendering the old certificates before the new certificates are issued to the special master within the last clause of § 13, which is in these words: "Except where a certificate is lost or destroyed, such corporation shall not be compelled to issue a new certificate for the stock until the old certificate is surrendered to it."

No question of the jurisdiction of this court to make a proper decree has been raised by the parties. But the question (if there

is a question) being one going to the jurisdiction of the court ought not to be passed over because not raised by the parties.

We are of opinion that the court has jurisdiction, and that (to avoid misapprehension) it is best to state the grounds on which the jurisdiction rests.

This is a case where a personal decree for the payment of money had been obtained against each of the principal defendants. And they appeared and put in their defence in the original suits in equity. These personal decrees had been obtained against the defendants before the present bill in equity was filed, and are wholly unsatisfied. The present bill in equity is filed in the same court in which the earlier decrees were made. It seeks to have applied in part satisfaction of these earlier decrees the shares in the capital stock of the defendant corporations standing in the names of the principal defendants. It is not sought in the present bill to establish a claim against the principal defendants. The claim against them has passed into two final decrees binding on these defendants. What is sought is to have applied to the satisfaction of these decrees property which cannot be taken on execution at law. Since the repeal of R. L. c. 177, §§ 46–51, by St. 1910, c. 531, shares of the capital stock of corporations cannot be levied upon at law. Upon the repeal of that statute a creditor who has reduced his claim to a judgment or a final decree can without further statutory enactment maintain a bill in equity to reach and apply in satisfaction of it property which cannot be taken on execution at common law. The case at bar is not a case where the jurisdiction of the court is founded upon the seizure by the court of property within its jurisdiction. Had this been a case in which the personal liability of the principal defendants had not been established by the earlier decrees (which are binding on these defendants) the jurisdiction of the court over the present bill would have depended upon the question whether the court in the present suit had made the necessary seizure of the shares in the capital stock of the defendant corporations to sustain jurisdiction under the doctrine set forth in *Pennoyer* v. *Neff*, 95 U. S. 714, and the many cases following that decision. As we have said, the question whether there has been such a seizure of these shares of stock as will give jurisdiction under that doctrine does not arise in the case at bar. The question of jurisdiction in the case of the present bill in equity resolves itself

into the question of the necessity of personal service of process upon the defendants in this suit. There is nothing in the nature of the present suit which requires personal service (or its equivalent) upon the principal defendants. To take in satisfaction property which can be come at at law an execution issues as of course without notice to the defendant, and the execution is a roving commission empowering the sheriff in behalf of the plaintiff to take any property (of a kind which can be taken on execution) belonging to the defendant. There is no reason in the nature of the proceeding why process in equity should not issue in the same way to take in satisfaction property which cannot be taken on execution at law. It happens that the machinery employed to reach property which cannot be taken on execution at law is a bill in equity resulting in a decree in which particular property is specified and described. But the fact that property which cannot be taken on execution at law is as matter of fact reached by a bill in equity is not (as we have said) because the usual attributes of a bill in equity (which results in a personal decree against the defendant) are material to the decree entered on a bill by a judgment creditor to reach and apply. They are not. It is (as we have said) an accident that that is the machinery employed. So far as the principal defendant is concerned he cannot complain if the property described in the decree does or does not belong to him. If it does belong to him it is rightly applied in satisfaction of his liability established by the earlier decree and he has nothing to complain of. If it does not belong to him he is not injured, and the true owner, not being a party to the bill in equity, is not bound by the decree and has his remedy as the true owner of property taken under an execution has his remedy.

There are many instances in equity proceedings where personal service on a party is not necessary. In our opinion a bill in equity brought by a creditor in the same court in which he has established the liability of the defendant by an earlier decree to reach and apply property which cannot be taken on execution at law is one of them.

We do not find it necessary to consider whether in the case at bar there was a sufficient seizure of the shares of stock here in question to give jurisdiction under the doctrine stated in *Pennoyer* v. *Neff, ubi supra.*

It follows from what has been said that the clause inserted in the proposed decree by the plaintiff requiring him to file a bond in compliance with R. L. c. 170, § 8, is not necessary.

We are of opinion that the parties who have appeared should be heard upon the terms upon which the shares to be put in trust by the plaintiff for the protection of the corporation and possible transferees of Almy's certificates are to be put in trust. For that reason the terms of the decree should be settled by a single justice.

To avoid misapprehension we add that no argument has been made by the Boston Storage Warehouse Company. We assume that the parties acted on the supposition that there is jurisdiction in equity against that defendant to reach and apply specific chattels entrusted to it by the principal defendant because an action at law cannot be brought to enforce a decree in equity.

The decrees in the original suits against William and Lillian Almy are decrees and not judgments and should be so spoken of in the decree in this suit.

The case is to stand for a further hearing before a single justice to settle the terms of the modification of the draft decree. Any pertinent evidence which either party may desire may be put in at that time.

*Decree accordingly.*