HELEN L. RILEY *vs.* HAMPSHIRE COUNTY NATIONAL BANK.

Hampshire.    September 17, 1895. — October 19, 1895.

Present: FIELD, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Promissory Note — Husband and Wife — Pledge — Agency — Evidence — Estoppel — Equity — Practice.*

If during the trial of a suit in equity exceptions are taken by the defendant to the admission of evidence, and after a decree in favor of the plaintiff, from which no appeal is taken, the case is reported for the determination of this court upon the questions of law presented by the report, the court will not revise the findings of fact necessarily involved in the decree, although all the evidence is reported.

If a married woman indorses a promissory note given by her husband to a bank for a loan to him, and pledges to the bank shares of stock owned by her as collateral security for the note, the fact that she subsequently indorsed other notes of her husband discounted at the same bank, without demanding the delivery to her of the certificate of stock, does not show an agreement on her part that the stock should be security for the general indebtedness of her husband to the bank.

If a married woman indorses a promissory note given by her husband to a bank for a loan to him, and pledges to the bank shares of stock owned by her as collateral security for the note, it is competent for her to show, upon a bill in equity to redeem the stock, that her husband had no express authority to write upon another note, given by him to the bank for the amount to which his account had been overdrawn, a statement that the stock is collateral security for that note also, and that the transaction was without her knowledge; and it is also competent for her to show that she never knew that he had overdrawn his account.

Oral evidence is admissible to show that an assignment of shares of stock, however absolute in form, is merely a pledge; and the consideration and purpose of the transaction may be shown in the same way.

That a married woman, who has indorsed a promissory note given by her husband to a bank for a loan to him and pledged to the bank shares of stock owned by her as collateral security for the note, subsequently indorses other notes of her husband discounted at the same bank, without demanding the delivery to her of the certificate of stock, the assignment of which is signed by her in blank and accompanied by a power of attorney to the bank to sell the stock, does not estop her to maintain a bill in equity against the bank to redeem the stock, without paying the amount of another note given without her knowledge by her husband to the bank for the amount to which his account had been overdrawn, and upon which he wrote a statement that the stock was collateral security for that note also, the fact of such overdraft being unknown to her.

LATHROP, J.    This is a bill in equity, filed January 24, 1895, to redeem seventeen shares of the capital stock of the North-

ampton Emery Wheel Company. The bill alleges that these shares are held by the defendant as collateral security for two promissory notes signed by the plaintiff's husband and indorsed by her, one dated April 12, 1894, for $150, payable three months after date, and the other dated June 4, 1894, for $2,000, also payable three months after date. The bill also alleges that the plaintiff, on January 23, 1895, tendered to the defendant the full amount due on these notes, and demanded delivery of the shares, which was refused.

The answer admits the tender, and alleges that the defendant holds the shares as collateral security for a promissory note, dated June 21, 1894, for $165, payable three months after date, as well as for the two notes mentioned in the bill. The answer further alleges that the certificate of the shares of stock was signed in blank by the plaintiff; that a power of attorney authorizing a transfer of the shares was also signed by the plaintiff; and both instruments were delivered to the defendant for the purpose of arranging "a line of credit" to be given to the plaintiff's husband by the defendant; that the plaintiff made her husband her agent in the first transaction and in all the subsequent ones; and that the plaintiff has permitted and sanctioned such a course of dealing with regard to the credit the defendant was giving her husband on the strength of the collateral security, that she is not in a position to defeat the right of the defendant to hold the shares for the three notes.

The case was heard by a single justice of the Superior Court, who entered a decree for the plaintiff, with costs. The decree ordered the defendant to surrender and deliver to the plaintiff the certificate of seventeen shares described in the bill, on a renewed tender of the amount previously tendered. The decree also stated that the stock was not held for the note of $165. No appeal was taken from the decree, but the justice has reported the case. The reservation is in these words : " The questions of law presented by this report are reserved for the determination of the Supreme Judicial Court, who will make such order or decree in the case as justice and equity may require. All the evidence is reported." This is followed by a report of the evidence. Apparently this was done in this form because the only exceptions taken rendered it necessary to con-

sider the evidence for the purposes of the exceptions ; but we are of opinion that we are not called upon to revise the facts which the judge must have found to have entered the decree which he did.

During the trial, the defendant asked the court to rule that the plaintiff was not, on the competent evidence, entitled to a decree permitting her to redeem said shares without paying the balance due on said note for $165, as well as the sum tendered by her. This ruling the court declined to give, and the defendant excepted. Exception was also taken by the defendant to the admission of certain testimony of the plaintiff and her husband, with reference to the arrangement with the defendant bank, and their dealing with it, and as to what the defendant did, understood, permitted and did not permit.

There are certain facts in the case which are not in dispute, as follows. In 1887, John E. Riley, the husband of the plaintiff, began business in Northampton, and borrowed the sum of $2,500, giving his promissory note therefor, indorsed by the plaintiff. At this time she pledged to the defendant the seventeen shares in question, and delivered to the bank an assignment of the shares, signed by her in blank, and also signed and delivered a power of attorney authorizing the cashier of the defendant bank to sell, assign, and transfer the shares above mentioned. The plaintiff's husband continued to keep an account with the defendant until June 26, 1894, when he filed a petition in insolvency. The first note was renewed from time to time, and sometimes other notes were given. Thirty-seven notes were given in all, and all of the notes, with the exception of the last one for $165, which is the one in controversy, had upon them the name of the plaintiff. At the time of the failure of the plaintiff's husband the bank held the two notes mentioned in the bill for which the plaintiff admits her liability, and the note for $165.

The circumstances attending the giving of this note were these. On June 21, 1894, Mr. Warner, the president of the defendant, knowing that the plaintiff's husband was "close pressed," called upon him at his shop, told him that his account was overdrawn to the amount of $165, and asked him to make a note to the bank for that amount, and to write upon

it the words, " Collateral 17 shares Northampton Emery Wheel Co." This was done. At this time the plaintiff was not present, she was not consulted, and knew nothing about it until after her husband's failure.

The question of fact in dispute between the parties is whether the shares of stock were pledged at the time of the first transaction for a general credit to be given to her husband, and included all notes to be thereafter given as well as the note then given. The testimony of the husband tends to show that the pledge was made for a specific purpose, namely, to enable him to buy out a local merchant, for which the note for $2,500 was discounted. The testimony in behalf of the defendant, in support of its proposition that the pledge was also for future indebtedness, came from its president and cashier, and is not very definite. Assuming that the evidence of the defendant tended to show that the pledge was for future indebtedness, and there was therefore contradictory evidence on this point, we cannot revise the finding of the judge in favor of the plaintiff.

There is no pretence of any subsequent agreement between the parties, except as it is shown by their actions. Undoubtedly, the fact that the plaintiff, by signing her name on other notes discounted at the same bank, without demanding the delivery to her of the certificate of stock, is strong evidence that, as each note was signed, she assented that the shares should be security for this note; but this does not show an agreement on her part that they should be security for the general indebtedness of her husband to the defendant.

The evidence objected to relates principally to the question whether the husband had express authority to bind his wife by putting on the note for $165 the words, " Collateral 17 shares Northampton Emery Wheel Co." The answer alleged that her husband was her agent in the matter of the note for $165, as well as in the first transaction. It was competent for the plaintiff to show that he had no express authority and that the transaction was without her knowledge. So, too, it was competent for her to show that she never knew that he had ever overdrawn his account, for the purpose of showing that she had not acquiesced in his so doing.

The effect of the form of the transfer of the shares of stock

and of the power of attorney remains to be considered. There is no doubt that oral evidence is admissible to show that such a transaction, however absolute in form, is merely a pledge ; and the consideration and purpose of the transaction may be shown in the same way. *Newton* v. *Fay*, 10 Allen, 505. *Minchin* v. *Minchin*, 157 Mass. 265. As was said in *Boardman* v. *Holmes*, 124 Mass. 438, 442, "we must look to the whole transaction between the parties."

We find nothing in the conduct of the plaintiff which works an estoppel against her, or furnishes ground upon which a court of equity should not afford her relief. In each of her prior transactions with the bank she indorsed the note made by her husband. The note in controversy was not indorsed by her, and she knew nothing about it until after it was delivered. While it appears that her husband was frequently allowed to overdraw his account, it also appears that until the last transaction he borrowed money from third persons and paid his overdrafts, and that his wife was ignorant of these transactions.

It follows that the decree of the Superior Court must be

*Affirmed.*

*W. G. Bassett*, for the defendant.
*J. C. Hammond & H. P. Field*, for the plaintiff.