JOSEPHINE D. PALMER, executrix, *vs.* O'BANNON CORPORATION & another.

Suffolk. December 8, 9, 1924. — May 26, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & WAIT, JJ.

*Pledge. Corporation,* Transfer of shares. *Agency,* Scope of authority. *Damages,* In suit in equity. *Equity Pleading and Practice,* Decree.

A bank was authorized by a corporation, whose stock was not listed upon any exchange, was not widely known, and was closely held, to act as its sole agent in making transfers of its stock, and a supply of blank certificates, signed by the proper officers of the corporation and bearing the corporation seal, was placed in the bank's hands for that purpose. A stockholder signed on the back of his certificates a form for transfer, leaving it undated and blank as to the names of a transferee and of an attorney to make the transfer. Some of the certificates also were accompanied by a stationer's form of transfer, which included the name of a transferee but not the name of an attorney to make the transfer, and which was signed, sealed and dated by the stockholder,

his signature being witnessed. All these documents were handed by the stockholder to the person named as the transferee in the stationer's form, as general collateral for a number of notes of the stockholder held by the transferee, and later were presented to the transfer agent with a letter, addressed to it as such, containing directions to issue a new certificate to the person named as transferee in the stationer's form of transfer. The corporation directed the transfer agent to refuse the transfer because of lunacy of the stockholder, and refusal followed. The alleged assignee of the stock brought a suit in equity against the transfer agent and the corporation to compel transfer. An interlocutory decree was entered in the suit directing that transfer be made when the name of a transferee was inserted in the blank form, and referring to a master the question as to what damages, if any, the plaintiff could recover. Transfer was made accordingly. The answer of the corporation relied upon the failure of the plaintiff to insert the name of a transferee or of an attorney for transfer previous to the bringing of the suit. *Held,* that

(1) The defendants properly might require the plaintiff to satisfy them of his authority to demand and to receive the new certificates;

(2) It was the duty of the plaintiff and not of the defendants, or of either of them, to fill in the blanks with the plaintiff's name, and, this not being done as to some of the certificates, completed instruments were not presented for transfer;

(3) The stationer's form of transfer was not complete because it did not bear the name of an attorney to make the transfer, and the bank could not be required to insert the name of an attorney;

(4) There having been no duty upon either defendant to transfer any of the stock before the presentation of a completed document of assignment, the plaintiff had not shown that he was entitled to any damages;

(5) The mere fact, that before the suit the defendant corporation relied solely upon lunacy of the stockholder as a reason for refusing transfer to the plaintiff, did not estop it, after suit was brought, from relying on the defence set up in its answer, the lack of a named transferee or attorney in the instruments of transfer, there having been no fraud nor intention to mislead on its part;

(6) The acts of the bank were solely those of an agent for a disclosed principal, and, even if those acts had been wrongful, liability therefor would have rested upon the corporation and not upon the bank;

(7) The terms of the pledge under which the transfer was demanded not appearing, the plaintiff had not shown a right to dividends declared after he demanded transfer of the shares;

(8) The bill must be dismissed so far as it related to damages.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on October 20, 1920, by Theodore D. Palmer against O'Bannon Corporation and Merchants National Bank of Boston, seeking decrees requiring the bank as transfer agent of O'Bannon Corporation to record upon

the books of the corporation the transfer of nine hundred and sixty-eight shares of the common stock of the corporation, alleged assignments thereof having been presented to the bank as the transfer agent of O'Bannon Corporation and transfer having been demanded on August 12, 1920; that the O'Bannon Corporation be required to pay to the plaintiff all dividends which would have been payable to him if such transfer had been made when first requested; and also that damages sustained by the plaintiff from the alleged wrongful refusal by the bank as transfer agent so to transfer the shares be assessed and that the defendants be required to pay the same.

By an interlocutory decree entered September 23, 1921, Josephine D. Palmer, executrix of the will of Theodore D. Palmer, was admitted to prosecute the suit as plaintiff.

On September 30, 1921, a guardian *ad litem* of John W. O'Bannon as a person mentally incapable of properly protecting his interests in the cause was appointed, and on December 13, 1921, he filed a report.

On December 17, 1921, by order of *Jenney*, J., an interlocutory decree was entered directing the defendants, upon a presentation to them or either of them of the certificates of stock referred to in the bill of complaint bearing the name "Josephine D. Palmer, Executrix of the will of Theodore D. Palmer, deceased," inserted in the blanks provided on said certificates for the name of the transferee and bearing also necessary stamps required by law, to transfer the nine hundred and sixty-eight shares of the stock of O'Bannon Corporation into the name of the executrix and to deliver to her a certificate in due form showing such transfer. The decree stated "that nothing in this decree shall be construed as affecting the question whether John W. O'Bannon, the person in whose name said shares now stand on the books of the defendant O'Bannon Corporation, is indebted to the estate of Theodore D. Palmer or *vice versa* or the amount of such indebtedness, if any, or as affecting the question whether the defendants or either of them are liable to the plaintiff in damages for failure to transfer said shares or any of them prior to the entry of this decree, or as affecting the question

whether the defendants, either or both of them, were legally obligated to make transfer of said shares or any of them or to issue a new certificate or certificates representing such shares as demanded by the plaintiff in exchange for the certificates presented to the defendants for transfer by the plaintiff's decedent in the condition in which said certificates were presented to the defendants."

In the same decree, the suit was referred to a master to "hear the parties and their evidence as to whether the defendants or either of them are liable to the plaintiff in damages by reason of their failure to transfer said shares prior to the entry of this decree and as to the sum or sums, if any, in which they or either of them are so liable, to find the facts material to these questions and to report the same to the court."

Among other facts shown by the master's report, were the following: "The stock of the corporation was not listed, was not widely known, and was closely held. The number of common stockholders during 1920 was between eighty and ninety. The market for it was generally speaking limited to the insiders, and to a few brokers and speculators who had become familiar with it through brokerage transactions and the gossip of brokerage offices. There were few sales and those seldom at more than one hundred shares at a time."

Transfer of the shares in question to Theodore D. Palmer by O'Bannon was to secure a personal indebtedness of O'Bannon to Palmer. O'Bannon stated in a letter to Palmer, dated March 12, 1920, as follows: "I hereby agree to have you hold the remainder of my O'Bannon Corporation common stock amounting to nine hundred and sixty-eight shares now in your possession as general collateral to all notes of mine held by you. I also hereby agree that I will make a bequest to you in my new will to secure you until all my debts with you are paid." No other terms under which the collateral was held were described in the report.

The master further found as follows: "The bank maintained a transfer department which had charge of stock transfers for the several corporations for which it acted as transfer agent or registrar of transfers. When stock certifi-

cates are presented to a transfer agent for transfer the name of the attorney to make the transfer is regularly left blank and is filled by the agent's inserting the name of one of its clerks; it is also common for the transfer agent to receive certificates for transfer with the space for the name of the transferee left blank and to fill in the name in accordance with instructions given by letter or otherwise, the new certificate being issued in the name so inserted. The practice of the bank did not differ from the usual practice in this matter. It was the practice of the Merchants National Bank when stock of corporations for which it acted as transfer agent or registrar was presented to it for transfer, to make transfers and issue new certificates without consulting the corporation, any legal questions that might suggest themselves being dealt with by the bank's counsel. In handling the stock transfers for the O'Bannon Corporation the bank followed its usual practice in this respect until July 16, 1920, when it received from the O'Bannon Corporation certain instructions with respect to transfers of stock standing in the name of John W. O'Bannon as hereinafter set forth in this report." As a result of the instructions referred to, further transfers of the O'Bannon stock were stopped pending proceedings relating to a committee appointed under the laws of New York with relation to his alleged insanity.

The nine hundred and sixty-eight shares which are the subject matter of this suit were represented by twenty-five certificates of the common stock of the corporation, which stood in the name of John W. O'Bannon. On the back of each of the certificates was a blank form for transfer. O'Bannon had indorsed all of these blank forms on the back of the certificates, without filling in either the date, the name of transferee, the number of shares to be transferred, or the name of the attorney to make the transfer. With three of the certificates there also was a signed form of assignment on a stationer's form, which named O'Bannon as the transferor, "T. D. Palmer" as the transferee, and bore a date and the signature and seal of O'Bannon before a witness. The name of the attorney to make the transfer was left blank. All of the certificates representing the nine hundred and

sixty-eight shares and also the assignment on the stationer's form were enclosed in a letter sent by a bank in Orange, New Jersey, to the defendant bank, containing, in substance, the following: "We are enclosing herewith the following certificates [describing them] . . . which we would ask you to transfer to the name of Theodore D. Palmer . . . . We understand that you are the transfer agent. Kindly return the new certificates to us with the bill for your charges in the matter which we will remit promptly."

Other material facts found by the master are described in the opinion. The plaintiff filed objections and exceptions to the report, four of which were to the exclusion of certain evidence by the master bearing upon the financial responsibility of the O'Bannon Corporation. Other exceptions related to the questions, whether and how much the plaintiff was damaged by the alleged wrongful acts of the defendant.

The suit was reserved by *Carroll*, J., for determination by the full court.

*H. S. Davis*, (*J. M. Raymond* with him,) for the plaintiff.

*R. E. Goodwin*, (*R. R. Duncan* with him,) for the defendants.

BRALEY, J. The bill was brought by Theodore D. Palmer October 20, 1920, and upon his death the present plaintiff, his executrix, appeared to prosecute the suit. It appears from the master's report that the litigation rests on a pledge by John W. O'Bannon, dated March 12, 1920, of nine hundred and sixty-eight shares of the common stock of the defendant corporation to the plaintiff's testator to be held as general collateral for the payment of certain indebtedness due or to become due from O'Bannon to Palmer. We shall refer to the O'Bannon Corporation as the corporation, and to Palmer as the pledgee. The undated assignment or power of attorney on the back of each of the twenty-five stock certificates was signed and delivered in blank by O'Bannon. The corporation, organized and chartered under the laws of this Commonwealth with its place of business in Boston, appointed the defendant bank, also of Boston, its agent for the transfer of stock. A supply of blank certificates, signed by the proper officers and bearing the corporate seal, was placed in the

possession and custody of the bank, whose agency is not shown to have been revoked during the period covered by the controversy, and thereafter no transfers were made except through the bank. It does not appear whether the bank also had the stock ledger or transfer book. The pledgee, who had become a resident of the State of New Jersey, acting by his agent, a national bank of Orange, New Jersey, as early as August 9, 1920, transmitted the certificates still unfilled to the bank, and requested a transfer of the stock and the issuance of new certificates in the name of Theodore D. Palmer. While the pledgee by reason of his special property was entitled to possession until the debt secured was satisfied, and could protect, transfer or sell his interest, the title of O'Bannon as between the parties could not be divested except by strict foreclosure. *Pomeroy* v. *Smith,* 17 Pick. 85. *Ullman* v. *Barnard,* 7 Gray, 554. *Adams* v. *O'Connor,* 100 Mass. 515. *Gurley* v. *Reed,* 190 Mass. 509. *Chase* v. *Boston,* 193 Mass. 522.

But the officers of the corporation had heard rumors late in March, 1920, concerning O'Bannon's mental condition, which was followed on April 10, 1920, by information of his commitment to a hospital for examination, and on May 15, 1920, after preliminary proceedings O'Bannon, a resident of the State of New York, was adjudged incompetent by the Supreme Court of that State and a committee of his person and property was appointed. The law of New York was a question of fact, and the master reports that the decree, which does not appear to have been modified or revoked, was valid. *Electric Welding Co. Ltd.* v. *Prince,* 195 Mass. 242. The board of directors of the corporation under these circumstances notified the bank on June 15, 1920, that no transfers of shares of the corporation's stock should thereafter be made out in the name of O'Bannon without express instructions. The correspondence however between the bank and the pledgee's agent and his counsel relating to, and insisting upon, the registration of the shares continued without any action by the bank, which also received notice from the O'Bannon committee that the pledge was invalid, and that no transfer should be made. But the certificates,

which never were withdrawn or demanded, remained with the bank.

The defendants contend, that, even if the pledgee was legally entitled to have the stock transferred, he should have presented certificates which he had completed by filling in the blank assignments with his own name, and, not having done so, they were not required to supply the omission, especially where the validity of the pledge was in serious dispute. The interlocutory decree of December 17, 1921, from which neither party appealed, ordered a transfer, and the issuance of new certificates forthwith by the defendants, "upon presentation to them or either of them of the certificates of stock referred to in the bill of complaint bearing the name 'Josephine D. Palmer, Executrix of the will of Theodore D. Palmer, deceased,' inserted in the blanks provided on said certificates for the name of a transferee . . . ." This decree, with which the defendants have complied, must be held to have established the plaintiff's right to a transfer if at that time the certificates were presented in the form therein prescribed. *United Drug Co.* v. *Cordley & Hayes,* 239 Mass. 334, 337. It recites that "the only question affecting the merits to be heard, determined or foreclosed at this time by the court is the question whether the plaintiff is now entitled to a decree directing the defendants to transfer the shares of stock referred to in the bill of complaint to the plaintiff."

The case was then referred to a master to hear the parties and their evidence "as to whether the defendants or either of them are liable to the plaintiff in damages by reason of their failure to transfer the shares of stock . . . prior to December 17, 1921, and as to the sum or sums, if any, in which they or either of them are so liable." The remaining questions therefore, are, whether the plaintiff, as she contends, is entitled to recover damages against the defendants either jointly, or severally.

If, as found by the master, a pledgee of shares of stock of a corporation is *prima facie* entitled under the law of the State of New York and of the State of New Jersey to have it transferred into his own name, yet the defendants properly

might require him to satisfy them of his authority to demand and receive the new certificates. *Bird* v. *Chicago, Iowa & Nebraska Railroad,* 137 Mass. 428, 429, and cases cited. The master states, that the pledgee wished to have new certificates in his own name in exchange for those held in pledge standing in O'Bannon's name, because he feared that, owing to the controversy between him and the committee, he would be enjoined if he attempted to sell the stock. It was the duty of the proper officers of the corporation to ascertain, whether its stock was being transferred in accordance with its by-laws, and in accordance with law, before issuing new certificates. *Allen* v. *South Boston Railroad,* 150 Mass. 200, 204. And under the blank power of attorney of O'Bannon it was the duty of the pledgee, and not the duty of the defendants to fill in the blanks with his own name, and if this was not done a completed instrument had not been presented. If it be assumed that the certificates for three hundred shares given by O'Bannon to Palmer September 17, 1912, which were assigned by O'Bannon under seal, were an absolute transfer, notwithstanding the language of the general pledge, the certificates did not state the name of the attorney to make the transfer and neither the corporation nor the bank was required to act in that capacity. If new certificates were issued the stock ledger or transfer book would fail to show the right of the pledgee to have the transfer made. *Andrews* v. *Worcester, Nashua & Rochester Railroad,* 159 Mass. 64, 67. *Clews* v. *Friedman,* 182 Mass. 555.

In the first request for a transfer by the pledgee's agent, and subsequently by his counsel, the bank was addressed as transfer agent. The pledgee with knowledge of the relation was dealing with the bank as agent of a disclosed principal. The fact of agency and the identity of the principal were known to him, and the refusal of the bank on September 15, 1920, to make and register the transfers at that time was in accordance with the instructions of the corporation, the bank's principal, which the bank was bound to follow. *People's National Bank* v. *Freeman's National Bank,* 169 Mass. 129. *National Bank* v. *City Bank,* 103 U. S. 668. The shares in question were issued by the corporation, and

formed part of its capital stock.   The duty of transference
upon change in ownership, in accordance with law rested
upon the corporation, whether the transferee had an abso-
lute or only a defeasible title.   St. 1910, c. 171, § 9.   *Boston
Safe Deposit & Trust Co.* v. *Adams,* 224 Mass. 442, 446.
The bank moreover made no independent promise to nor
entered into any independent relations with the pledgee, and
the master's report conclusively shows, that it did not act on
its own responsibility.   *Conant* v. *Alvord,* 166 Mass. 311.   It
is urged, that the pledgee did not know of the special
instructions, and that, being a general agent, the bank had
ostensible authority.   *Danforth* v. *Chandler,* 237 Mass. 518.
But the relation of principal. and agent had not been termi-
nated, and, if the bank declined to register the stock in the
pledgee's name, the mere declination would not be an act of
misfeasance as between itself and the pledgee.   It would be
at most a neglect of duty for which the corporation alone was
responsible.   *Commercial Bank* v. *French,* 21 Pick. 486.
*Cabot Bank* v. *Morton,* 4 Gray, 156, 160.   *Eastern Railroad*
v. *Benedict,* 5 Gray, 561, 562.   *Atlantic Cotton Mills* v.
*Indian Orchard Mills,* 147 Mass. 268.   *Quincy Mutual Fire
Ins. Co.* v. *International Trust Co.* 217 Mass. 370.   *Colvin* v.
*Holbrook,* 2 N. Y. 126, 129.   *Lloyd* v. *Grace, Smith & Co.*
[1912] A. C. 716.   See *Barstow* v. *City Trust Co.* 216 Mass.
330.   The plaintiff has failed to establish any claim for
damages against the defendant bank.

     The situation of the parties between August 9, 1920, or
September 15, 1920, and December 17, 1921, does not appear
to have changed materially, except that the value of the
stock had greatly depreciated.   The plaintiff received the
new certificates under the decree covering all the shares,
which she sold and bid in at a gross price of $130 in March,
1922, pursuant to an order of the court entered in the
O'Bannon proceedings.   The plaintiff claims damages either
on the ground of conversion or a wrongful detention of the
stock from August 9, 1920, to December 17, 1921.   See
*McMurtrie* v. *Guiler,* 183 Mass. 451.   The vote of the board
of directors not to transfer, followed by notice to the bank
of the vote, and the notice of the bank through its trust officer

September 15, 1920, to the pledgee's agent that no transfer could now be made, was a refusal of the corporation to act because of the lunacy of O'Bannon, raising doubts as to the validity of the pledgee's title. It was not put on the ground, that until the pledgee had filled the blanks the corporation was not required to issue new certificates. But, it being plain on the facts reported that there was no fraud or intention to deceive or mislead, the defendant is not estopped from making this defence, which is pleaded in the fourth paragraph of the answer. *Stiff* v. *Ashton,* 155 Mass. 130. *Jones* v. *Adams,* 162 Mass. 224. *Moss* v. *Old Colony Trust Co.* 246 Mass. 139, 150. *College Point Boat Corp.* v. *United States,* 267 U. S. 12.

The corporation, as previously said, could not be compelled by the pledgee to do that which it was not required to do, and its failure of compliance with his request was not on the present record a conversion of the stock, or an unlawful detention of the stock or of the certificates. *Clews* v. *Friedman,* 182 Mass. 555. *Gray* v. *Portland Bank,* 3 Mass. 364. *Sargent* v. *Franklin Ins. Co.* 8 Pick. 90. *Wyman* v. *American Powder Co.* 8 Cush. 168. *Allen* v. *South Boston Railroad,* 150 Mass. 200. *Hagar* v. *Norton,* 188 Mass. 47. *Bellows Falls Power Co.* v. *Commonwealth,* 222 Mass. 51, 58, 59. *Hall* v. *Paine,* 224 Mass. 62. See G. L. c. 155, §§ 24–36, inclusive; c. 156, § 33.

The exceptions of the defendants to the master's report have therefore become immaterial and the plaintiff's exceptions, in so far as argued, need not be considered, as she cannot recover damages.

The plaintiff also claims the amount of certain dividends, with interest, payable by the corporation November 1, 1920, but which have now become of fractional value by reason of its financial status. The general property in the shares remained in the pledgor until foreclosure, and in the absence of any terms in the pledge that the pledgee was to receive them, they belonged to O'Bannon. *Commonwealth* v. *Althause,* 207 Mass. 32. *Fairbanks* v. *Sargent,* 117 N. Y. 320. *Merchants' Bank* v. *State Bank,* 10 Wall. 604. *Clark* v. *Iselin,* 21 Wall. 360.

The result is, that an interlocutory decree is to be entered overruling all the exceptions to, and confirming the master's report, and a final decree is to be entered dismissing the bill as to the claim for damages.

*Ordered accordingly.*