THE MONOTYPE COMPOSITION COMPANY, INCORPORATED, *vs.* ALBERT M. KIERNAN & others.

Suffolk.    November 8, 1945. — May 1, 1946.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, RONAN, WILKINS, & SPALDING, JJ.

*Corporation,* Transfer of stock.    *Pledge.    Equity Pleading and Practice,* Appeal.

If each of two so called "final" decrees entered at different times in a suit in equity made a final disposition of a separable controversy, the whole case came to this court by a seasonable appeal from the earlier decree and a seasonable appeal from the later decree; if the later decree was in truth the only final decree, the whole case came to this court on the appeal therefrom.

A delivery in pledge by a stockholder in a corporation of his stock certificate with a separate document of transfer in blank was invalid as against the corporation because of a provision in its agreement of association and in its by-laws, printed on the certificate, forbidding a stockholder wishing to "sell or transfer" his stock to do so without first offering it for purchase by the corporation on certain terms.

BILL IN EQUITY, filed in the Superior Court on June 30, 1944.

The case was heard by *Swift*, J.

The case was argued at the bar in November, 1945, before *Field*, C.J., *Lummus, Dolan, Ronan,* & *Spalding*, JJ., and afterwards was submitted on briefs to all the Justices.

*J. Friedberg*, for East Cambridge Garage, Inc.

*C. P. Bartlett*, for the plaintiff.

LUMMUS, J.    The plaintiff is a Massachusetts corporation wholly owned and controlled by the defendant Albert M. Kiernan and his brother and sisters. There are twenty-two shares of preferred stock, of which said Kiernan owns four, and thirty shares of common stock, of which Kiernan owns six. He is the president, but works at a machine, while one of his sisters manages the business. The agree-

ment of association and a similar by-law[1] require a "stock-holder" wishing to "sell or transfer" any stock to offer it first to the corporation. The relevant by-law appeared on every certificate of stock. G. L. (Ter. Ed.) c. 155, § 40.

Kiernan wished to raise money on his stock, but he was unwilling to offer it to the corporation because he did not wish his relatives to know of his financial difficulties. On February 17, 1944, he borrowed $1,760.23 from the defendant East Cambridge Garage, Inc., a corporation of varied activities, one of which was lending money, for which he gave a collateral note signed by him payable $10 a week, secured by a pledge of all his stock. Only one weekly payment was ever made, and the entire principal became payable by a provision in the note early in March, 1944.

Kiernan delivered the stock certificates to the defendant corporation as pledgee, with a separate document of transfer accompanying each certificate, signed by him but not completely filled out. These documents were similar in form. A typical one read as follows: "For value received I hereby sell, assign and transfer unto [blank] three (3) shares of the preferred capital stock of The Monotype Composition Company, Incorporated, standing in my name on the books of said corporation represented by Certificate No. 13 herewith, and do hereby irrevocably constitute and appoint [blank] attorney to transfer the said stock on the books of the within named company with full power of substitution in the premises."[2]

---

[1] "No stockholder shall sell or transfer any stock in this corporation except upon the following conditions, which however may be waived by the board of directors in any particular instance: A stockholder wishing to sell or transfer any of his stock shall first in writing offer to sell the same to the corporation through the board of directors, disclosing the consideration for the proposed sale or transfer and the name and address of the person to whom it is to be made. The board of directors shall have thirty days from the date of such offer to purchase the stock in behalf of the corporation for a consideration to be determined by three arbitrators, of which one shall be appointed by each party and the third by the two appointed; or the board may after such determination elect to buy the said stock at the price of the proposed sale or transfer."

[2] Such a form of transfer is called an assignment "in blank" in G. L. (Ter. Ed.) c. 155, § 27 (b). The first blank in that form is left for the name of the transferee in whose name a new certificate is to be issued. The second blank is left for the name of the clerk in the office of the corporation or transfer agent who may record the transfer on the books. Christy, Transfer of Stock (2d ed. 1940) § 63. *Palmer* v. *O'Bannon Corp.* 253 Mass. 8, 11, 12. *Sun Insurance Office, Ltd.* v. *Leshefsky,* 31 Fed. Sup. 952, 956.

The plaintiff corporation brought this bill on June 30, 1944, to restrain a proposed sale of the pledged stock at auction under the power contained in the collateral note. The defendant corporation included in its answer a counterclaim, which it called by the obsolete name of cross bill (Rule 32 of the Superior Court [1932]; Equity Rule 6 [252 Mass. 602]), praying for the establishment of its debt against the defendant Kiernan, and for an order for the sale of the stock to satisfy that debt. *Beaman-Marvell Co.* v. *Marvell,* 305 Mass. 246, 247.

A decree denominated "final" was entered on December 28, 1944, granting the plaintiff an injunction against the sale of the stock, on the ground that the purported transfer of the stock to the defendant corporation was invalid, dismissing the counterclaim so far as it is against the plaintiff, and dismissing the bill as against the defendant members of the firm of R. L. Day and Company, by whom the proposed auction sale was to have been conducted. On January 15, 1945, the defendant corporation appealed. The counterclaim so far as it is against the defendant Kiernan was not disposed of by the decree of December 28, 1944, but on May 7, 1945, there was entered an additional "final" decree ordering Kiernan to pay the amount due on the collateral note. On May 14, 1945, the defendant corporation appealed from the decree of May 7, 1945, and purported to "reaffirm" its appeal from the decree of December 28, 1944. If these so called "final" decrees were in truth final as to separable controversies, the seasonable appeals from each bring the whole case here. If, however, there was no final decree until that of May 7, 1945, which supplemented the decree of December 28, 1944, the whole case is here on the appeal from that final decree. *Kennedy* v. *Shain,* 288 Mass. 458, 460.

The validity of the restraint upon alienation contained in the agreement of association and the by-law is not challenged. See *Longyear* v. *Hardman,* 219 Mass. 405; *Commissioner of Banks* v. *Waltham Trust Co.* 293 Mass. 62; *New England Trust Co.* v. *Spaulding,* 310 Mass. 424. The only question concerns its interpretation. A "stockholder" may not "sell or transfer" stock without first offering it to the

corporation with a disclosure of the proposed consideration and the identity of the purchaser. That seems to preclude a sale at auction. "The effect of the by-law is to give the corporation an option on the trade proposed to be made with the outsider." *Silversmiths Co.* v. *Reed & Barton Corp.* 199 Mass. 371, 375. Since the main purpose of the by-law is to prevent undesired persons from gaining a right to share in the management of the plaintiff corporation, it is unlikely that those who adopted the by-law intended that it might be circumvented by the simple device of a pledge and a subsequent sale by the pledgee under a power of attorney, or by a transfer that might enable a pledgee to obtain a new certificate in his own name upon which he might vote.

Possibly the transaction in the present case was not a "sale" of the stock. *Silversmiths Co.* v. *Reed & Barton Corp.* 199 Mass. 371. *Good Fellows Associates, Inc.* v. *Silverman,* 283 Mass. 173. But if it was a "transfer" of the stock it was equally forbidden.

As between the defendant corporation and Kiernan it is true that the transaction was what is commonly called a pledge, with power to sell. Kiernan retained rights in the stock (*J. H. Wentworth Co.* v. *French,* 176 Mass. 442; *Palmer* v. *O'Bannon Corp.* 253 Mass. 8, 18) that could be foreclosed only by the exercise of that power to sell. *Newton* v. *Fay,* 10 Allen, 505. *Pond* v. *Eddy,* 113 Mass. 149. *Reeve* v. *Dennett,* 137 Mass. 315. *Riley* v. *Hampshire County National Bank,* 164 Mass. 482, 485, 486. *Raphael* v. *Mullen,* 171 Mass. 111. *Chase* v. *Boston,* 193 Mass. 522, 526. *Wehrle* v. *Mercantile National Bank,* 221 Mass. 585, 587. *Palmer* v. *O'Bannon Corp.* 253 Mass. 8, 14. *McCarthy* v. *Fitzgerald,* 296 Mass. 181.

This is not a case of the delivery of a stock certificate, without more, as a pledge. The stock certificate was accompanied by a transfer in blank, signed by the stockholder. Delivery of the stock certificate with such a transfer purported to pass the legal title to the stock, and but for the restrictive by-law was sufficient to do so. G. L. (Ter. Ed.) c. 155, §§ 27 (b), 43. *Edgerly* v. *First National Bank,* 292 Mass. 181, 184, et seq. *Johnson* v. *Johnson,* 300 Mass. 24,

29, 30. *DeBoer* v. *Anthony*, 300 Mass. 403, 411, et seq. *Director of Liquidations* v. *Wood*, 306 Mass. 1. *Morson* v. *Second National Bank*, 306 Mass. 588. The present case differs from *Good Fellows Associates, Inc.* v. *Silverman*, 283 Mass. 173, 180, not only in the greater breadth of the by-law but also in the presence of an instrument in form capable of passing legal title.

Neither is this a case in which the defendant corporation is entitled merely to a certificate of stock in its name as pledgee. In *Crease* v. *Babcock*, 10 Met. 525, 545 (see also same case in 23 Pick. 334), a pledgee had the stock transferred into his own name on the books of the corporation. He was held liable as a "holder" of stock, and was said to have the right to vote, and to receive dividends, although the pledgor might redeem. See also *Holyoke Bank* v. *Burnham*, 11 Cush. 183. That pledgee was in a difficult situation. If he should transfer the stock into his own name, he faced statutory liability for corporate debts. If he should not, though he held the certificate, the stock might be attached or taken on execution for a debt of the pledgor, under the law as it existed prior to St. 1884, c. 229, and St. 1910, c. 171, § 13, c. 531, §§ 1, 2.[1] Then came St. 1838, c. 98, § 3, now G. L. (Ter. Ed.) c. 155, § 46, which provided for the issuance of a stock certificate to a pledgee, reciting the name of the pledgor and the fact that it is held as collateral security, with the result that the pledgor alone is liable as a stockholder and (to add words inserted by St. 1903, c. 423, § 1, c. 437, § 28) entitled to vote. The purpose of this statute was "to enable the pledgee to hold the security without being liable for the debts of the corporation or to taxation for the property," and not to exclude other methods of conveying stock as collateral security. *Newton* v. *Fay*, 10 Allen, 505, 506. *First National Bank* v. *Hingham Manuf. Co.* 127 Mass. 563, 571. *J. H. Wentworth Co.* v. *French*, 176 Mass. 442, 443. *Athol Savings Bank* v.

---

[1] Rev. Sts. (1836) c. 36, § 49; c. 90, §§ 36–38; c. 97, §§ 31, 36–41. *Fisher* v. *Essex Bank*, 5 Gray, 373. *Blanchard* v. *Dedham Gas Light Co.* 12 Gray, 213. *Boston Music Hall Association* v. *Cory*, 129 Mass. 435. *Clews* v. *Friedman*, 182 Mass. 555. *Lane* v. *Volunteer Co-operative Bank*, 307 Mass. 508. *Jordan* v. *Lavin*, *ante*, 362, 367.

*Bennett*, 203 Mass. 480, 485. Now that a transferee of a stock certificate has been protected in his title without transfer on the books (St. 1884, c. 229; *Clews* v. *Friedman*, 182 Mass. 555; G. L. [Ter. Ed.] c. 155, §§ 24–46), and attachment of corporate shares at law has been abolished (*Jordan* v. *Lavin, ante,* 362, 367), that provision of G. L. (Ter. Ed.) c. 155, § 46, has fallen into disuse.

In the absence of a restraint upon alienation, a transfer like the one in the present case enables a pledgee, if he desires, to obtain a new certificate absolute in form in his own name, which as between him and the corporation will give him all the incidents of ownership. G. L. (Ter. Ed.) c. 155, §§ 29, 46. *Johnson* v. *Somerville Dyeing & Bleaching Co.* 15 Gray, 216, 219, 220. *Day* v. *Holmes*, 103 Mass. 306, 310. *Fay* v. *Gray*, 124 Mass. 500, 502, 503. *Fitchburg Savings Bank* v. *Torrey*, 134 Mass. 239. *J. H. Wentworth Co.* v. *French*, 176 Mass. 442. *Barrett* v. *King*, 181 Mass. 476, 478. *Athol Savings Bank* v. *Bennett*, 203 Mass. 480, 485. *Palmer* v. *O'Bannon Corp.* 253 Mass. 8, 15, 18. *Moore* v. *Waterbury Tool Co.* 124 Conn. 201, 116 Am. L. R. 564, and note. *Jones* v. *Costlow*, 349 Penn. St. 136. *Kaufman* v. *Provident Savings Bank & Trust Co.* 23 N. Y. Sup. (2d) 637, 645, 647. Christy, Transfer of Stock (2d ed. 1940) § 77.

As between the plaintiff corporation and the defendant corporation, the transfer made in this case was as repugnant to the agreement of association and the by-law as a transfer intended to be absolute and final would have been. It presented almost as great a threat of interference by strangers in the corporate affairs of the plaintiff. We think it was prohibited by the agreement of association and the by-law. See *Fopiano* v. *Italian Catholic Cemetery Association*, 260 Mass. 99. Treating the two so called final decrees as a single final decree, that decree is

*Affirmed with costs.*