FORD MOTOR COMPANY *vs*. LOREN M. BARRETT.

Middlesex.   March 10, 1988 — August 17, 1988.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Motor Vehicle*, Defect, Warranty. *Warranty*. *Evidence*, Prima facie evidence. *Practice, Civil*, Summary judgment.

In an automobile manufacturer's appeal from an arbitrator's decision rendered pursuant to G. L. c. 90, § 7N½ (the "Lemon Law"), summary judgment in favor of the vehicle's owner was incorrectly entered where the arbitrator's findings operated only as prima facie evidence in the Superior Court proceeding, as provided in G. L. c. 90, § 7N½ (6), with the result that uncontroverted affidavits submitted by the manufacturer were sufficient to raise an issue of material fact with respect to an alleged design defect in the vehicle's suspension system [242-245], and conflicting documentary evidence clearly showed a genuine issue of material fact regarding the continuing existence of an oil consumption problem [245-246].

CIVIL ACTION commenced in the Superior Court Department on September 29, 1986.

The case was heard by *Joseph S. Mitchell, Jr.,* J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Brian A. Davis* (*Thayer Fremont-Smith* with him) for the plaintiff.

*Emanuel Howard* for the defendant.

*Paula W. Gold,* Secretary of Consumer Affairs and Business Regulation, *& Paul W. Gromer,* Special Assistant Attorney General, for the Secretary of Consumer Affairs and Business Regulation, amicus curiae, submitted a brief.

LIACOS, J. Ford Motor Company (Ford) filed an action in the Superior Court in Middlesex County appealing an arbitrator's decision rendered under G. L. c. 90, § 7N½ (1986 ed.)

(Lemon Law), in favor of Loren M. Barrett. Barrett filed an answer to Ford's complaint. He also filed a motion for summary judgment. Accompanying Barrett's motion was an affidavit incorporating the arbitrator's decision. Ford filed a memorandum in opposition to Barrett's motion for summary judgment, together with two affidavits. Following a hearing, the Superior Court judge granted Barrett's motion for summary judgment. Ford appeals. We transferred the case here on our own motion. We reverse the judgment.

*The facts.* Barrett purchased a 1984 Ford Mustang SVO automobile from the Duddie Ford dealership on or about July 15, 1985. Over the course of the following year, Barrett brought the vehicle to the dealer for repairs on no fewer than ten occasions. On June 22, 1986, Barrett notified Ford of the repair history of the vehicle. Specifically, Barrett listed excessive oil consumption as a reason for many of those service appointments and stated that "the car bunny hops over bumps and around corner[s]." In response to Barrett's complaints, Ford exercised its statutorily provided final opportunity to cure the defects. G. L. c. 90, § 7N½ (4).

In early July, 1986, Barrett filed a request for arbitration with the Executive Office of Consumer Affairs and Business Regulation. In the request for arbitration, Barrett listed the defects the manufacturer or authorized dealer attempted to repair, which "substantially impair[ed] the use, market value, or safety" of his vehicle. Among the defects listed was excessive oil consumption. In the same request, Barrett stated in narrative form that the safety of the vehicle was impaired "because when driving the vehicle at any speed exceeding 20 miles per hour and the vehicle hits a pothole or a bump the vehicle bunny hops which is it jumps from one side to another."

An arbitration hearing was held on August 28, 1986. The arbitrator found that at least three repair attempts were made for the same defect, that, after the manufacturer's final repair opportunity expired, the vehicle was substantially impaired, and that the cause of the substantial impairment was excessive oil consumption and "bunny hopping." The arbitrator ordered

Ford to accept return of the vehicle and either to replace the vehicle or to refund $16,016.56 to Barrett.

Ford appealed the arbitrator's decision to the Superior Court, as provided for in G. L. c. 90, § 7N½ (6). In response to Barrett's motion for summary judgment, Ford filed the affidavits of Sherman Pratt and Brian Maloney. By granting Barrett's motion for summary judgment, the Superior Court judge necessarily found that no genuine issue of material fact existed. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). On appeal, Ford contends that the summary judgment should be reversed because (1) there are genuine issues of material fact, and (2) in his request for arbitration, Barrett failed to identify excessive oil consumption as a continuing defect in the vehicle.

*Genuine issues of material fact.* Summary judgment is awarded properly "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Mass. R. Civ. P. 56 (c). The moving party has the burden of proving that no genuine issues of material fact exist. *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 371 (1982). In ruling on a motion for summary judgment, the judge should assume that all the facts set forth in the opposing party's affidavits are true, and that any reasonable inferences raised therein and favorable to that party will be drawn. See *Coveney* v. *President of the College of the Holy Cross,* 388 Mass. 16, 17 (1983).

General Laws c. 90, § 7N½ (6), provides in part: "All findings of fact issuing from a state-certified, new car arbitration shall be taken as prima facie evidence of whether the standards set forth in this section for vehicles required to be refunded or replaced have been met in any subsequent action brought by either party ensuing from the matter considered in said arbitration." Thus, the arbitrator's finding of a nonconformity in the Barrett's vehicle, which "substantially impair[ed] the vehicle's use, market value, or safety," operated as prima facie evidence in the Superior Court.

Prima facie evidence "has up to a certain point an artificial legal force which compels the conclusion that the evidence is true, and requires the judge to give effect to its unquestionable truth by a ruling or a direction to the jury." *Cook* v. *Farm Serv. Stores, Inc.,* 301 Mass. 564, 566 (1938). That "artificial legal force" remains until evidence appears that warrants a contrary finding. *Id.,* and cases cited therein. *Pahigian* v. *Manufacturers' Life Ins. Co.,* 349 Mass. 78, 85 (1965). See P.J. Liacos, Massachusetts Evidence 54 (5th ed. 1981 & Supp. 1985).

The prima facie evidence presented by Barrett worked to shift the burden of production to Ford. See Liacos, *supra* at 48. "If [prima facie] evidence is not in any way met or controlled, and relates to the decisive issue in the case, a verdict or finding is required in accordance with its effect." *Thomes* v. *Meyer Store Inc.,* 268 Mass. 587, 588 (1929). *O'Brion, Russell & Co.* v. *LeMay,* 370 Mass. 243, 244-245 (1976). We recognize, however, that in the context of a summary judgment proceeding, prima facie evidence "does not by itself establish that 'there is no genuine issue as to any material fact' " since it "by definition may be rebutted." *Vaught Constr. Corp.* v. *Bertonazzi Buick Co.,* 371 Mass. 553, 560 (1976).

Ford, the nonmoving party in this action, filed two affidavits in its opposition to Barrett's summary judgment motion. Sherman Pratt's affidavit states two things,[1] that he examined Barrett's automobile (personal knowledge) and that he concluded

---

[1] The affidavit of Sherman Pratt states:

"I, Sherman Pratt, hereby state under oath:

"1. I am the Service Manager at Falmouth Ford in Falmouth, Massachusetts. In August, 1986, I was the Service Manager at Duddie Ford in Westboro, Massachusetts. I have worked in the automotive industry for approximately 20 years in numerous capacities, including automotive mechanic.

"2. The statements made in this affidavit are based upon facts within my own personal knowledge.

"3. In late July, 1986, I personally assisted the service mechanics at Duddie Ford in examining the rear portion of Mr. Barrett's 1984 SVO Mustang, including the vehicle's rear suspension, for defective or malfunctioning components.

"there was no defect in the rear suspension" of the vehicle. Based on his personal examination of the rear portion of Barrett's vehicle, Pratt attested to the absence of defects in the vehicle's suspension system. Fairly viewed, the affidavit means that Pratt's examination revealed that the suspension system, to which so-called "bunny hopping" would be related, was as it was designed to be. Brian Maloney's affidavit[2] attested to the design characteristics of the model vehicle, of which he had personal knowledge. It attested to the vehicle's function

---

"4. Based upon my own, first-hand observations, I determined that there was no defect in the rear suspension of Mr. Barrett's 1984 SVO Mustang in July, 1986."

[2] The affidavit of Brian Maloney states:

"I, Brian Maloney, hereby state under oath:

"1. I am a District Service Engineer in Ford Motor Company's Boston District Office. I possess a Bachelor's Degree in Automotive Technology, and a Master's Degree in Technology.

"2. The statements made in this affidavit are based upon facts within my own personal knowledge.

"3. The rear suspension system installed on Mr. Barrett's vehicle is a heavy duty suspension system specifically designed for high performance vehicles such as the 1984 SVO Mustang. As compared to typical Mustangs, the SVO Mustang incorporates higher-rate springs, different shock absorber valving, as well as a Quadra-link system, which incorporates four shock absorbers instead of the usual two. The 1984 SVO Mustang is also equiped [*sic*] with lower profile tires.

"4. The purposes of the above design modificatons incorporated in the 1984 SVO Mustang are to allow greater traction for the vehicle during acceleration, to keep the car at a more stable angle during high-speed turns, and to transfer a greater amount of 'road feel' to the driver.

"5. The above design modifications incorporated in the 1984 SVO Mustang, however, also result in a harsher ride compared to typical Mustang vehicles. A 1984 SVO Mustang, operating as designed, will transmit a greater sensation of road imperfections, including bumps, to the vehicle's passengers. This characteristic is normal for the 1984 SVO Mustang, and constitutes one of the compromises reached in designing such a high performance vehicle.

"6. Mr. Barrett's alleged sensation of 'bunny-hopping' over bumps in his 1984 SVO Mustang is directly attributable to the high performance suspension incorporated in that vehicle, and does not, in any way, indicate the presence of a defect in that vehicle."

and to the absence of any design defect. Greater factual specificity in both affidavits would have been preferable. Each, however, raises an issue of fact, based on the personal knowledge of the affiant, regarding a defect in the rear suspension system. Contrast *Community Nat'l Bank* v. *Dawes,* 369 Mass. 550, 555-556 (1976) (vague and general allegations of expected proof insufficient basis for denial of summary judgment).

If true, the affidavits show that the vehicle was without relevant manufacturing or design defect. At trial, if otherwise admissible, Pratt's and Maloney's testimony would create a question for the fact finder as to whether there was a continuing "bunny hopping" "nonconformity" in the vehicle. Thus, the affidavits were adequate to prevent summary judgment for Barrett based on the so-called "bunny hopping" problem. See *Madsen* v. *Erwin,* 395 Mass. 715, 721 (1985).

Next, assuming that the issue of excessive oil consumption properly was before the arbitrator, we reach the issue whether a genuine issue of material fact exists regarding excessive oil consumption. One of the documents attached to Ford Motor Company's complaint for review in the Superior Court was Barrett's June 22, 1986, notice to Ford of its final repair opportunity. That notice stated that in August, 1985, and January, 1986, the vehicle was at the dealer's because of excessive burning of oil and of the "[e]ngine blowing out oil while driving." The notice then stated: "I am having the following problems with my vehicle at this time: (1) clucking noise from rear end; (2) the car races after being driven three to four miles; (3) the car bunny hops over bumps and around corner, and (4) the car is not level when parked on a flat surface." The notice neither expressly nor impliedly suggested that repair efforts concerning oil problems had been unsuccessful. To the contrary, the clear implication of that notice was that the oil problems were not continuing. Furthermore, an attachment to the defendant's request for arbitration specifically stated that the vehicle's difficulties with loss of engine oil had been repaired on or before January 6, 1986. Thus, despite the arbitrator's finding that the oil use difficulty was continuing, there was

contrary evidence. Summary judgment for Barrett on the basis of the engine oil consumption issue was inappropriate.

The resolution of the disputed facts should be left to the trier of fact. Summary judgment is reversed, and the case is remanded for trial.

*So ordered.*