Lauriat, J.
Michael E. DiLoreto, (“DiLoreto”), has brought a two-count negligence action against the Town of Winchester (“Winchester”) for damages he allegedly suffered as a result of Winchester’s negligent operation of its public water supply system (Count I) and its negligent control of a storm drain gate (Count II). Winchester has now moved for summary judgment on both counts. For the following reasons, Winchester’s motion is allowed in part and denied in part.
BACKGROUND
At all times relevant to this action, DiLoreto owned and resided at 51 Squire Road, Winchester. Winchester owned and maintained a water main running approximately five to six feet beneath Squire Road as it passed in front of DiLoreto’s property. On April 18, 1998, the Squire Road water main broke, causing water to flow onto DiLoreto’s property and causing extensive damage to DiLoreto’s home and personal possessions. DiLoreto attributes these damages to Winchester’s failure to adequately supervise and maintain the town’s water supply system.
Winchester also owned and maintained a storm drain gate on Thombeny Road, along the rear of the DiLoreto property. DiLoreto alleges that during rainy weather, water and debris collect in front of the gate until the gate is raised. DiLoreto claims that Winchester was notified of this condition and did not respond in an appropriate manner. DiLoreto alleges that Winchester failed to adequately supervise, maintain and control the gate. As a result of these failures, DiLoreto claims that on June 13, 1998, his home and personal belongings were once again flooded and damaged.
Winchester seeks summary judgment on DiLoreto’s first claim on the ground that it is barred by G.L.c. 84. It seeks summary judgment on DiLoreto’s second claim on the ground that its actions fell within the “discretionary function” exception to liability under G.L.c. 258.
DISCUSSION
The court will grant summary judgment when there is no genuine issues of material fact and where the record, including the pleadings and affidavits entitles the moving party to judgment as a matter of law. Casesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating that there are no triable issues. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The non-moving party can not defeat a summary judgment motion by resting on the pleadings or merely asserting disputed issues of fact. Lalonde v. Eissner, 405 Mass. 207, 209 (1989). However, for the purposes of a summary judgment, the court will review the facts and all reasonable inferences from those facts in the light most favorable to the non-moving party. Ford Motor Co., Inc. v. Barrett, 403 Mass. 240, 242 (1988).
I.
Winchester does not dispute the facts relating to the April 25, 1998 incident. Rather it asserts that DiLoreto has mistakenly applied G.L.c. 258 (The Massachusetts Tort Claims Act) to facts which fall within the exclusive scope of G.L.c. 84. That statute provides that “[highways and town ways ... shall be kept in repair at the expense of the town in which they are situated, so that they may be reasonably safe and convenient for travelers, with their horses, teams, vehicles and carriages at all seasons." G.L.c. 84, §1. Winchester claims this statute governs the water main break because the water main was located on Squire Road, a town way. Winchester further contends that DiLoreto’s claim is barred by G.L.c. 84, §15, which limits the town’s liability to “defects” in town ways. Such a defect is defined as “anything in the state or condition of the way that renders it unsafe or inconvenient for ordinary travel.” Minasian v. City of Somerville, 40 Mass.App.Ct. 25, 26 (1996), quoting Gallant v. Worcester, 383 Mass. 707, 711 (1981). Winchester asserts that because the water main break occurred on that part of the system that followed the line of a public way (as opposed to that portion of the system that ran from the water main into the DiLoreto home), the town is not liable for damage to the DiLoreto properly. DiLoreto counters that his claim properly arises under G.L.c. 258, which would subject the town to common law tort liability in these specific circumstances.
Winchester has, on this claim, placed the cart, or perhaps more appropriately, the carriage, in front of the horse. As even the small portion of the statute quoted above makes plain, G.L.c. 84 addresses a municipalily’s duly to travelers using its roads and not *32 to its citizens living beside them. This distinction is bolstered further by the undisputed fact in this case that the water main in question was not exactly “on” Squire Road, but rather buried five to six feet beneath the roadway. The dissimilarity between the uses and purposes of the road and the water main suggests that yoking them together under a single statute based solely on their proximity to each other would be inappropriate. Even a municipal parking lot, something seemingly much more similar to a road than a water main, has been held to be beyond the scope of G.L.c. 84, because it was not found to be a town way. See Doherty v. Town of Belmont, 396 Mass. 271, 276 (1985).
The court also notes that G.L.c. 258 was amended in 1992 to bring the activities of water and sewer commissions within the definition of a “public employer,” thereby making them subject to the statute. See Alex v. Boston Water and Sewer Commission, 45 Mass.App.Ct. 914 (1998). Prior to the amendment, such commissions were considered as an “independent body politic and corporate,” analogous to those hybrid entities like the Massachusetts Bay Transportation Authority that stand outside the scope of G.L.c. 258. See Kargman v. Boston Water and Sewer Commission, 18 Mass.App.Ct. 51, 59 (1984). Winchester does not have an independently constituted commission overseeing its water mains. Nevertheless, the court concludes that the 1992 amendment to G.L.c. 258 expresses a recognition that a town’s activities in the operation of its water system are sufficiently distinct from road work, or public health, or any other potentially overlapping civic functions, to give rise to liability under the established common law tort principles applicable to municipalities pursuant to G.L.c. 258. Winchester has not demonstrated that it is entitled to judgment as a matter of law on this claim. Accordingly, its motion for summary judgment on Count I must be denied.
II.
The parties do not dispute the material facts surrounding the June 11, 1998 incident. The date coincided with a “ 100 year flood” which backed a great deal of water, trash and other debris behind the storm drain gate. DiLoreto called the town to get it to lift the gate so the water could flow away quicker and easier. Winchester had many storm related requests for assistance on that date. There is some question as to how many times the town visited the site, but it is undisputed that Winchester did respond, and that one of DiLoreto’s neighbors, rather than any town employee, ultimately lifted the gate. DiLoreto claims his home and property were damaged before the water receded.
The issue relating to this incident is sharply drawn. Winchester concedes that G.L.c. 258 applies to the situation involving the storm drain gate. However, it argues, and DiLoreto disputes, that its employees’ actions on the date in question fell within the statutory exemption of G.L.c. 258, which reads:
§10. The provisions of section one to eight, inclusive, shall not apply to:
(b) any claim based upon the exercise and performance or the failure to exercise or perform a discretionaiy function or duly on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused.
In order to determine whether an act qualifies for § 10(b) protection, the court must apply a two-prong test: did the governmental actor have any discretion at all as to which course to follow, and if so, was it the kind of discretion for which § 10(b) immunity is available. Harry Stoller and Co., Inc. v. City of Lowell, 412 Mass. 139, 141 (1992). To answer the first prong, the court need only ask whether the town and its employees “had any choice to do or not to do what plaintiff claims caused him harm.” Id. Here, it is clear that the town could have chosen to address the situation involving the storm drain gate differently than it did. Thus, the first prong is satisfied.
Under the second prong, The Massachusetts Tort Claims Act provides immunity only for discretionary “conduct that involves policy making or planning.” Id. The Court in Stoller held that “when the conduct that caused the injury has a ‘high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning, governmental entities should remain immune from liability.’ But, when that conduct ‘involves rather the carrying out of previously established policies or plans, such acts should be governed by the established standards of tort liability applicable to private individuals and entities.’ ” Id. at 142, quoting Whitney v. Worcester, 373 Mass. 208, 218 (1977).
The analysis does not depend on the obvious distinction between policies formally promulgated after sufficient study and those made by operational employees confronted by unexpected circumstances in the field. Any governmental employee’s decision can be immunized from liability as long as that decision is based on public policy considerations. Stoller, 412 Mass. at 143. This includes applications of policy “based on an individual, case-by-case analysis.” Pina v. Commonwealth, 400 Mass. 408, 415 (1987).
The Court in Stoller pointed to a non-exclusive list of factors designed to help determine which government decisions fall within the ambit of public policy and planning. These factors include “if the injury producing conduct was an integral part of governmental policymaking or planning, if the imposition of liability might jeopardize the quality of the governmental process, or if the case could not be decided without usurping the power and responsibility of either the *33 legislative or executive branch of government.” Stoller at 142.
Applying these principles to the incident at issue, Winchester’s conduct was clearly the result of the strain placed on public services by a weather emergency. The allocation of limited government resources in such circumstances invokes decision-making based on public policy considerations. Stoller cites, by way of example of a discretionary function, the situation of firemen choosing which property to save when resources are insufficient to save all threatened property. Stoller, 412 Mass. at 145. Similarly, the Supreme Judicial Court found in Barnett v. City of Lynn, 433 Mass. 662, 664-65 (2001), that a municipality’s decisions not to incur the costs of erecting a fence or removing snow from city owned property fell within the discretionary function immunity of §10(b). Decisions allocating governmental resources are not only integral to, but lie at the heart of government functions. Barnett at 665. To subject such decision-making to post hoc review by the judiciary under the guise of a tort claim would subject the executive to judicial second-guessing that could well lead to a diminution in the quality of governmental decisions as well as to the usurpation of the executive’s prerogatives. The court concludes that Winchester’s decision regarding when to provide service to DiLoreto on June 11, 1998 fulfills the purposes of the discretionary functions exception of G.L.c. 258, § 10(b) because it was made on the basis of public policy considerations. Therefore, as a matter of law, defendant’s motion for summary judgment on the second count must be allowed.
ORDER
For the foregoing reasons, the Defendant, Town of Winchester’s Motion for Summary Judgment Pursuant to M.R.C.P. 56 and Superior Court Rule 9A is DENIED as to Count I and ALLOWED as to Count II of the Plaintiffs Complaint.