Murphy, J.
The plaintiff, Paul G. Bickford (“Bickford”), brought this action against the defendant Premier Insurance Company (“Premier”) alleging violations of G.L.c. 93A and G.L.c. 176D claiming that Premier used unfair and deceptive practices in connection with a claim for uninsured motorist benefits arising from an automobile accident on November 29, 1998. The matter is before the Court on Premier’s Motion for Summary Judgment premised on the theory that Bickford failed to follow the notification procedure prerequisite to all consumer 93A claims. For the reasons detailed below, Premier’s motion for summary judgment is DENIED

BACKGROUND

At the time of the accident, Bickford was aback seat passenger of a car driven by Joshua Haigh. Bickford suffered facial scarring as a result of this accident. The car was owned by Stephen Konopka (“Konopka”) and insured with Hanover Insurance Company ("Hanover”). Bickford learned that Hanover planned to deny coverage to Bickford after determining Haigh had stolen the car. Bickford lived in the same household as Patricia Bickford who had automobile insurance with Premier that provided up to 820,000 per person in uninsured motorist coverage.
Bickford, through his attorney, notified Premier of a possible claim on February 25, 1999. On March 8, 1999 Bickford’s attorney sent Premier a letter informing the company that it could be found in violation of G.L.c. 93A and G.L.c. 176D, §3(9) if it did not extend a reasonable settlement offer to Bickford within thirty days. Premier responded that it had not violated either of the statutes, since it only had had notice of the claim for a few days. Additionally, at that time it was unclear whether Premier would have to pay anything on the claim, as Hanover had not formally denied Bickford’s claim. Hanover formally denied the claim on September 20, 1999. Shortly thereafter, Premier took Bickford’s examination under oath. Premier did not receive written notice of Hanover’s denial until January 18, 2000.
Premier, after accepting the claim, extended a $5,000 offer, which Bickford rejected. The parties went to arbitration where Bickford was awarded $68,245, a sum well in excess of Premier’s policy limits. Premier paid its $20,000 policy limit. Bickford thereupon responded with a second 93A letter, claiming unfair and deceptive business practice in that Premier should have “offered the policy,” since liability and damages were reasonably clear within 30 days of January 18, 2000. Failure to do so constituted, according to Bickford, the unfair and deceptive claims handling practice warned of in the initial March 8, 1999, 93A letter.

*677
DISCUSSION

The court will grant summary judgment where there are no genuine issues of material fact and where the record, including the pleadings and affidavits, entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Corrections, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and showing that summary judgment entitles it to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14. 16-17 (1989). The moving parry satisfies this burden by submitting affirmative evidence refuting an essential element of the opposing parry’s case, or by showing that the opposing party has no reasonable expectation of proving an essential element of its case at trial. O’Sullivan v. Shaw, 431 Mass. 201, 203 (2000). The court, for purposes of summary judgment, will review the facts and all reasonable inferences from those facts in the light most favorable to the non-moving party. Ford Motor Co., Inc. v. Barrett, 403 Mass. 240, 242 (1988).
I.
Much as it may at times appear otherwise, Massachusetts courts do not await anxiously the opportunity to avenge the outrage of consumers implicit in every filing of a G.L.c. 93A complaint. The statute clarifies that the parties themselves bear the primary responsibility for identifying and correcting unfair and deceptive trade practices, with recourse to the courts only when the parties’ efforts to resolve the matter fail. Because private negotiations can occur in a variety of haphazard manners, the legislature provided a specific procedural format to govern the early stages of a 93A case to assure the court that reasonable and diligent efforts to resolve the matter have taken place and to provide a sufficient factual record in writing upon which to base any further adjudication. None of this policy and procedure comports with the notion that 93A letters function prospectively either to expedite claims handling for busy law firms or by putting insurers on notice that a claimant will accept only the highest standards of claims practices. To determine the legal effect of Bickford’s March 8, 1999 letter under G.L.c. 93A, the Court must determine whether it fulfilled the functions the legislature intended.
Before a party may file a demand for relief under G.L.c. 93A, it must inform the potential defendant by means of a “written demand for relief identifying the claimant and reasonably describing the unfair and deceptive act or practice relied upon and the injuries suffered.” G.L.c. 93A, §9(3). “The purpose of the demand letter is to facilitate the settlement and damage assessment aspects of c. 93A and as such the letter and notice therein is a procedural requirement the absence of which is a bar to suit.” Entrialgo v. Twin City Dodge, Inc., 368 Mass. 807, 813 (1975). A written demand must list the specific unfair or deceptive practice causing the injury. Clegg v. Butler, 424 Mass. 413, 423 (1997). Additionally, the demand must be made when the potential defendant can control his damages through a timely response. See Cassano v. Gogos, 20 Mass.App.Ct. 348, 351 (1985).
Any relief sought by way of Bickford’s March 8, 1999 letter is precluded by its failure to specify any particular deceptive or unfair claims handling practices. All the March 8th letter does is tell Premier that if it engaged in prohibited conduct, Bickford could pursue a remedy for claims practices prohibited under G.L.c. 176D by way of a G.L.c. 93A action. As such, the Court views this letter as merely precatory or advisory, and not a 93A demand letter. That Bickford’s March 8th letter is — whatever it may have been — not a “93A demand letter” is attested to by the fact that nothing happened after the 30 days mentioned in the letter. Despite his rhetoric, Bickford knew that Premier. had not engaged in any prohibited practices throughout the summer months of 1999, because Hanover had not denied the claim and Premier therefore had neither accepted it nor was it required to do so. Similarly. Premier was not required to conduct an independent investigation of a claim it had not yet accepted. Bickford had the option to send a 93A demand after Premier accepted the claim. However, it was not until that point that Premier could incur any liability for deceptive and unfair claims practices. Thus, since Bickford’s March 8, 1999 letter failed to specify any prohibited claims practices, it does not serve as a demand letter as required under G.L.c. 93A and Bickford’s claims based on that letter are barred.
II.
Bickford sent another 93A demand letter on January 25, 2001. This letter specified numerous violations of G.L.c. 176D, centering around the thesis that Premier needlessly forced Bickford into arbitration after liability and damages were reasonable and clear. Premier contends that this letter is barred as well because it was written after confirmation of the arbitration award. Since the bodily injury claim was resolved, Premier argues that the January 25 th demand did not take place at a time that allowed Premier to limit its damage. While undoubtedly true for the underlying claim, the Court is not persuaded that this is the only type of damages appropriately addressed by a 93A demand.
G.L.c. 93A allows for the award of double or triple damage awards. Such multiple damage awards are given not to compensate claimants for their injuries, but to deter the willful and malicious use of unfair and deceptive trade practices for the benefit of the public. The January 25, 2001 demand letter spoke with particularity directly to this theory of damages and gave Premier the opportunity to limit its possible exposure along these lines. As such, it is both sufficiently specific and timely to serve the procedural functions of a 93A demand letter.
*678 Premier argues that Massachusetts law requires that 93A actions must commence before resolution of the individual claim in order to give the insurer the chance to cure any prohibited practices. While it is true that the more common practice is to proceed in this manner, it does not follow logically that an aggrieved party must do so. “There is nothing in the case law or statutes regulating claims against insurance companies for bad faith settlement practices that prohibits the injured party from adopting a strategy in which prior to filing suit every effort is made to recover monies ... by means of a negotiated settlement or an arbitrator’s award.” Goodman v. Seaver (Mass. Super. Ct. August 8, 2000) (Agnes, J.). Goodman is an example of a 93A action brought after an arbitrator's award but before it was confirmed. Metropolitan Property and Casualty Insurance Company v. Choukas, 47 Mass.App.Ct. 196 (1999), demonstrates a 93A claim brought prior to arbitration can survive an arbitrator’s award confined to resolving the bodily injury claim alone. Both cases serve to underline the distinct nature of claims alleging that insurance companies engaged in bad faith settlement practices. Since Bickford's possible claims under G.L.c. 176D and G.L.c. 93A were never resolved, they remain viable causes of action and cannot be disposed of on the basis urged urged by Premier.
However, since Bickford resolved his bodily injury claim, the January 25th letter and the suit brought after it only addresses the issue of whether Premier's handling of the claim justified double or triple damages. That level of damages shall be awarded only when the defendant’s actions are “willful or knowing violations.” G.L.c. 93A, §9(3). Bickford has offered evidence, for which the purposes of summary judgment must be credited, that Premier sought to take Bickford’s claim into arbitration despite knowing that liability and damages were reasonable and clear only in the hope of receiving an award lower than the actual value of the claim. This evidence raises genuine issues of material fact as to whether Premier’s claims practices in this case were “willful and knowing violations of G.L.c. 93A" implicating a discretionary multiple damage award for a so-called “176D violation.”
ORDER
For the foregoing reasons, defendant Premier Insurance Company’s motion for summary judgment is DENIED.