Agnes, Peter W., J.

INTRODUCTION

The plaintiff, Sara Robertson (“Robertson”), filed this action against Daniel M. Morgan, Barrett Morgan, Philip R. Morgan, and A. Mitra Morgan, as Trustees (‘Trustees”) of the Morgan Construction Company Voting Trust Agreement (“Voting Trust”), and Morgan Construction Company (collectively “the defendants”), claiming that the Voting Trust is void. She also seeks the distribution of her Voting Trust certificates. The matter is before the Court on the defendants’ motion for summary judgment.[2] For the following reasons, the motion is ALLOWED.

BACKGROUND

The summary judgment record, read in the light most favorable to the nonmoving party, Robertson, is as follows; Morgan Construction Company (“the company”) is a Worcester-based corporation that produces steel rolling mills. In 1952, the family stockholders of the company agreed to put their shares into a Voting Trust “to secure continuity and stability of policy and management of the Company.” (See Voting Trust Agreement.) Approximately thirty-two thousand (32,000) Voting Trust certificates were ultimately issued, of which two hundred and two (202) are held by the plaintiff. In the past, the company has declared dividends on its stock. Dividends are passed directly to certificate holders.
The Voting Trust Agreement states that “certificates shall be transferable on the books of the Voting Trustees by the holders of record thereof in person or by attorney duly authorized according to the rules established for that purpose by the Voting Trustees . . . [T]itle to any voting trust certificate . . . shall, to the extent permitted by law, be transferable with the same effect as in the case of a negotiable instrument.” (See Voting Trust Agreement, Art. III.) Over the years, *722 Voting Trust certificates have been transferred to persons and entities outside the Morgan family.
The company also has a policy that it may agree to purchase or redeem Voting Trust certificates from holders. In particular, it has established repurchase programs for employees and for estates that hold large quantities of certificates. The plaintiff is neither an employee of the company nor an estate for purposes of those programs. Nevertheless, in 1994, the company redeemed some of the plaintiffs certificates in a voluntary transaction by both parties. At no time has the plaintiff attempted to sell or transfer her certificates to third parties, though she has observed that it is her right to make such transfers to parties of her choice. She is unaware of any particular occasions in which holders were prevented from doing so.
The plaintiff had obtained her Voting Trust certificates through her marriage to and divorce from Gavin Robertson and the death of her mother-in-law. The marriage was later dissolved by an Arizona divorce decree, which included an agreed prohibition on either the plaintiff or her ex-husband giving or bequeathing their certificates to persons other than their children.
The plaintiff now complains that the Voting Trust is a nullity ab initio by virtue of the policies of the Trustees, which, she claims, have resulted in unlawful restrictions upon her ability to freely sell or otherwise transfer her Voting Trust certificates to third parties. The parties dispute whether the Trustees have established rules governing the transferability of certificates consistent with the Voting Trust Agreement, though the defendants insist that they have enacted such rules in a document entitled “Stock Issue and Redemption Procedures” and that the Trustees do not have the authority to prevent the plaintiff from transferring her certificates to persons of her choice. It is also disputed whether the Trustees have adopted an “unwritten” and unlawful policy against the free alienation of Voting Trust certificates.

DISCUSSION

I. Summary Judgment Standard

A motion for summary judgment shall be granted where the record, including pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, shows that there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Com, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a genuine issue as to any material fact and that it is entitled to have questions of law resolved in its favor. Mass.R.Civ.P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991); Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989); Ford Motor Co. v. Barnett, 403 Mass. 240, 242 (1988). A fact is “material” if it “is one that might affect the outcome of the suit under the applicable law.” Mulvihill v. The Top-Elite Co., 335 F.3d 15, 19 (1st Cir. 2003). Where the moving party does not bear the burden of proof at trial, it may establish the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opposing party’s case, or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis, 410 Mass. at 716.
If the moving party “establishes the absence of a triable issue,” the nonmoving party cannot defeat the motion by resting on mere allegations or denials in its pleadings or bare assertions of disputed facts. Pederson, 404 Mass. at 17. See LaLonde v. Eissner, 405 Mass. 207, 209 (1989). Rather, the nonmoving party “must respond and allege specific facts which would establish the existence of a genuine issue of material fact” and support its allegations with admissible and competent evidence, such as by submitting into the record affidavits or other evidentiaiy materials as provided in Rule 56. Pederson, 404 Mass. at 17. See Mass.R.Civ.P. 56(c), (e); LeBlanc v. Great American Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993). For a dispute of material fact to be “genuine,” it must be shown that “a reasonable fact finder could resolve the point in favor of the nonmoving party.” Mulvihill, 335 F.3d at 19. See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (a dispute is “genuine... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party”). In making that determination, the Court must construe the facts in the record in the light most favorable to the nonmoving party and draw any reasonable inferences in its favor. Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 644 (2002); Harrison v. NetCentric Corp., 433 Mass. 465, 468 (2001). See also United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).
II. Count I — Restraint on Alienation
The plaintiff contends that the Voting Trust is void and illegal. Her central thesis is that she has been unlawfully restricted from selling or transferring her Voting Trust certificates, particularly to third parties outside of the Morgan family. Specifically, she claims that the Voting Trust is void ab initio because the Trustees have failed to establish explicit rules governing the transferability of certificates, citing the language of the Voting Trust Agreement, which states, in part, that “certificates shall be transferable ... by the holders of record thereof . . . according to the rules established for that purpose by the Voting Trustees.” She concludes that such failure amounts to a complete prohibition on the free alienability of her Voting Trust certificates. The plaintiff also claims that she is unable to freely sell or transfer her certificates to parties outside of the Morgan family by virtue of alleged “unwritten” rules or obligations or policies established by the Trustees against such transfers. *723 However, the Court accepts none of these propositions in light of the summary judgment record and the' applicable law.
The plaintiffs allegation that the Voting Trust is a nullity because of the Trustees’ alleged failure to establish rules and procedures with respect to transfers of certificates is unconvincing. The plaintiff would have the Court conclude that such failure, if proven, amounts to a broad restraint or prohibition on her ability to freely transfer her Voting Trust certificates— a result which, she asserts, is contrary to public policy. As noted by the defendants, there is no authority that the failure of the Trustees to establish rules that govern the transfer of certificates is material to the validity of the Voting Trust. Nevertheless, the plaintiff relies on Tracey v. Franklin, 31 Del. ch. 477. 480-81 (1949), to support her assertion. However, her reliance on Tracey is misplaced. In that case, a voting trust agreement contained explicit language completely prohibiting certificate holders from selling their certificates to other parties while the voting trust was in effect. Because there was no proper justification for the prohibition, the Tracey court held the voting trust to be invalid. Id. at 486-88. Here, the Voting Trust does not expressly prohibit transfers of certificates. Rather, the Voting Trust document merely gives the Trustees the authority to make rules to effect transfers. Whereas the Tracey case involved the making of an improper rule against transferability, the present case involves the failure to make any rules at all. Therefore, the Tracey case is not persuasive in this context.
Even assuming that a failure to establish those rules were a dispositive issue, the plaintiff has not presented sufficient evidence to establish a genuine dispute of fact as to the existence or nonexistence of the rules. The defendants point out that Philip R. Morgan testified in his deposition that the “Stock Issue and Redemption Procedures” document serves as the rules of transferability for certificates and contains no restrictions against who may own or be transferee of certificates. That document states that “(s)hares can be transferred, all or some, to a family member, etc.,” (Stock Issue and Redemption Procedures) (emphasis added). In contrast, the plaintiff cannot identify specific facts to sufficiently dispute that evidence other than to postulate that because there is no language that, by name, explicitly outlines the rules for transferring certificates to third parties outside of the Morgan family, no rules must exist at all. The depositions, affidavits, and additional submitted materials contain no facts from which a fair inference may be drawn in the plaintiffs favor as to the absence of rules. Ng Bros. Constr., Inc., 436 Mass. at 644; Harrison, 433 Mass. at 468. Rather, the evidence upon which the plaintiff relies reinforces the defendants’ position.[3]
Furthermore, the plaintiffs argument is predicated on an overly technical interpretation of the Voting Trust Agreement itself. In essence, she reads the language of the Voting Trust Agreement to mean that certificates are transferable if and only if the Trustees establish those rules. From an interpretive standpoint, to say that “certificates shall be transferable . .. according to the rules established for that purpose by the Voting Trustees” need not simultaneously require the inference that the absence of those rules effectively rewrites the sentence to read “certificates shall not be transferable at all.” It is no less plausible that the sentence should plainly mean that certificates shall be broadly transferable and transferable according to particular rules where those rides are established. The second line of the sentence, which states that Voting Trust certificates “shall, to the extent permitted by law, be transferable with the same effect as in the case of a negotiable instrument,” supports the notion that holders may transfer their certificates as they see fit, but subject to whatever rules or procedures the Trustees effectuate.
It is also more consistent with Massachusetts law for the Court to construe the language in the broader fashion. The Commonwealth has long recognized the role that voting trusts have played in corporate governance. Demoulas v. Demoulas Supermarkets, Inc., 424 Mass. 501, 514 (1997); Sagalyn v. Meekins, Packard & Wheat, Inc., 290 Mass. 434, 440 (1935) (“There is nothing illegal about a voting trust of stockholders”). Voting trusts are legitimate “agreement[s] among stockholders of a corporation to make their power felt through combination for definite purposes.” Sagalyn, 290 Mass. at 440. See also Brightman v. Bates, 175 Mass. 105 (1900). In essence, it is the “policy of the [Commonwealth] ... to give recognition to voting trusts” and the privileges and obligations they afford. See DeMarco v. Paramount Ice Corp., 102 N.Y.S.2d 692, 698 (1950). Therefore, if voting trusts are void where they completely prohibit the transfer of certificates to third parties, the Court must not read the Voting Trust Agreement here in the plaintiffs rigid terms where a more practical interpretation of its language exists. As one nearby jurisdiction observed, “[a] voting trust agreement capable of construction which will make it valid will not be adjudged illegal.” DeMarco, 102 N.Y.S.2d at 698, quoting Mannheimer v. Keehn, 41 N.Y.S.2d 542, 547 (1944), modified on other grounds, 268 App.Div. 813, 49 N.Y.S.2d 304 (1944), citing Manson v. Curtis, 119 N.E. 559, 562 (N.Y. 1918). Furthermore, the record contains no facts to give rise to a genuine factual, or legal, dispute as to the intended meaning behind the Voting Trust Agreement’s language. It is undisputed that certificates have been transferred to third parties outside the Morgan family, that the plaintiffs own shares have been repurchased by (i.e. transferred to) the defendant company at times, and that the company has effected policies for the repurchase of certificates in the case of family members or estates.
*724 In addition, the plaintiff underestimates the validity of restrictions on the alienation of corporate interests. “[C]orporate restrictions on the sale or transfer of stock are generally honored.” Colbert v. Hennessy, 351 Mass. 131, 141 (1966). See also Monotype Composition v. Kiernan, 319 Mass. 456, 458-59 (1946). The Court willnot declare void “[r]estrictions on the sale of shares of stock in a corporation .. . unless [they are] palpably unreasonable.”[4] Colbert, 351 Mass. at 139, quoting Brown v. Little, Brown & Co., Inc., 269 Mass. 102, 110 (1929). This rule equally applies to voting trust certificates. See Colbert, 351 Mass. at 141 (restrictions that attach to stock certificates may also apply to voting trust certificates). Accordingly, if a “voting trust is not invalidated by provisions requiring that . . . certificates be transferred subject to the terms of an agreement,” it would defy common sense that it should be invalidated where no restrictions have been effected. See 18A Am.Jur.2d, Corporations §967 (2004).
For those same reasons, the plaintiffs alternative claim that there are, alternatively, “unwritten” rules against certificate transfers to non-Morgan third parties is likewise untenable. No reasonable jury could conclude that the Trustees have been restricting, officially or unofficially, the free transferability of Voting Trust certificates to third parties outside of the Morgan family. The plaintiff reaches her conclusion merely from her purported understanding that it has been the intention of the Trustees to keep the ultimate control of the company within the Morgan family. The plaintiff cannot point to any specific facts that tend to show that the Trustees have effected a policy consistent with that objective, assuming it to be true. Her allegations of unlawfully restrictive “unwritten rules” are essentially based on mere suspicion of the Trustees’ underlying motives of protecting the family business,[5] particularly where the undisputed facts tend to establish the opposite proposition — that selling or transferring Voting Trust certificates to non-Morgan third parties is not a prohibited practice. See Mass.R.Civ.P. 56 (nonmoving party must set forth specific facts). See also, e.g. BWH, Inc. v. Metropolitan Nat’l Bank, 267 Ark. 182, 189 (1979) (mere suspicion in nonmoving party’s mind does not create a genuine issue of material fact). Phillip R. Morgan has also averred that the plaintiff is free to transfer her certificates to the persons of her choice and that the Trustees do not have the authority to limit the ownership or transfer of certificates, primarily because the Voting Trust Agreement itself gives holders the right to transfer their certificates as they could negotiable instruments. As the defendants point out, the plaintiff herself has admitted that she has the right to sell or transfer her certificates and that she is unaware of particular instances in which holders were prevented from free transfers. Accordingly, the Court concludes there is no genuine dispute of material fact with respect to those issues. See Bennett v. Flanigon, 220 F.2d 799, 801-03 (7th Cir. 1955) (no issue of material fact exists where averments of plaintiffs complaint are refuted by his or her own deposition). The Court also recognizes that “control [ling] entry into [a] corporation by outsiders” using transfer restrictions is a valid practice. Colbert, 351 Mass. at 141.
Therefore, as there are no genuine issues of material fact and the law favors the defendants on the record before the Court, the defendants are entitled to summary judgment as to Count I of the plaintiffs complaint.
III. Count II — Close Corporation Status
In Count II of her complaint, the plaintiff again contends that the Voting Trust must be declared invalid. She claims that the company is not a close corporation and, therefore, the Voting Trust is not a legitimate instrument for the ownership of corporate interests. However, the use of voting trusts does not appear to be limited to close corporations. Neither case precedent nor the relevant corporate law statutes, G.L.c. 156B, §41A and c. 156D, §7.30, explicitly require a business to be a close corporation for purposes of establishing voting trusts. Rather, voting trusts have been considered “legitimate device[s] for carrying out such corporate purposes as centralized control of management, continuity of corporate policy, or representation of creditors’ interests.” Demoulas, 424 Mass. at 514. The purpose of the Voting Trust here was “to secure continuity and stability of management of the company” — -no less a valid corporate purpose. See Voting Trust Agreement; Colbert, 351 Mass. at 139 (voting trust was valid where “securing] corporate control of [the corporation] to those whose enterprise sponsored it and who contributed to the daily operation of the business” was not a “palpably unreasonable” purpose). The broad language of both G.L.c. 156D, §7.30 and G.L.c. 156B, §41A is further evidence that voting trusts and agreements are permissible across all business organizations to which those statutes apply.[6] Therefore, the Court concludes, as a matter of law, that the defendant company’s status as a close corporation is immaterial to the validity of the Voting Trust here.
Accordingly, as to Count II, the plaintiff has no reasonable expectation of proving an essential element of her claim at trial. Flesner, 410 Mass. at 809; Kourouvacilis, 410 Mass. at 716. As voting trusts are recognized in Massachusetts, the defendants are entitled to summary judgment as a matter of law on the undisputed facts

ORDER

For the foregoing reasons, it is hereby ORDERED that the defendants’ motion for summary judgment be ALLOWED.

The plaintiff brings four counts against the defendants in her complaint. However, the plaintiff has since waived Count III and has waived Count IV for purposes of the motion. Accordingly, the Court enters judgment as to Counts I and II only.

See e.g., Philip R. Morgan Deposition, 101-10:
Pg. 101
Q: Two lines up from the bottom it says, “Shares can be transferred all or some to a family member, et cetera . . . What does ”et cetera" mean?
A: I presume it means that shares can be transferred to anybody.
Pg. 104
Q: Well, then there aren’t any rules that permit a voting trust shareholder to sell to the general public, isn’t that correct, Mr. Morgan?
A: I would disagree with you ... Because when I read that voting trust certificates are in the same effect as in the case of a negotiable instrument, and can be transferred as such, that to me says that they can be transferred, they can be sold.
Pg. 110
Q: Can you tell us whether or not on any occasion, from Day One to today, a member of the Morgan family by blood or by marriage transferred during that person’s lifetime shares, voting trust shares, to a non-member of the Morgan family?
A: Yes, I can tell you that.
Q: On how many occasions?
A: I know of at least one occasion where five different institutions were gifted shares.
John W. Bergan Deposition, Pg. 56-57:
Q: No, is it fair to say that it just says shares can be transferred to a family member, et cetera, isn’t that what it says?
A: That is what it says.
Q: It doesn’t say that shares can be transferred to Danieli, does it? Does it?
A: It says “et cetera.”
Q: Okay. Do you think “et cetera" means the general population of the world?"
A: Yes.
Q: And what causes you to think that?
A: I believe as I read the voting trust document, that redemption — that trading of shares is something that’s a personal transaction of the shareholder with any outside party, and it was contemplated that share transactions could occur.

As there is no genuine dispute that transfer restrictions exist, there can be no conclusion that those restrictions are unreasonable.

See Sara Robertson’s Affidavit, para. 5, 6:
5. [E]ach one of [the] [T]rustees knew the family tradition and family rule that only Morgans could have ultimate control over management of . . . Morgan Construction Company... and each of the [T]rustees knew and believed that key management control had to be chosen by them from people within the ranks of the Morgan family as distinguished from going to any outside personnel who might be significantly more competent than people within the Morgan family.

General laws. c. 156D, §7.30 omits any reference to close corporations with respect to the creation of voting trusts. It reads, in part:
(a) One or more shareholders may create a voting trust, conferring on a trustee the right to vote or otherwise act for them, by signing an agreement setting out the provisions of the trust, which may include anything consistent with its purpose, and transferring their shares to the trustee. The trustee shall also sign the voting trust agreement and the shares transferred shall be registered in the name of the trustee. Promptly thereafter, the trustee shall' prepare a list of the names and addresses of all owners of beneficial interests in the trust, together with the number and class of shares each transferred to the trust, and deliver copies of the list and agreement to the corporation’s principal office.
Similarly, G.L.c. 156B, §41A makes no requirement that a business be a close corporation where agreements are made for the voting of shares:
An agreement between two or more stockholders or between one or more stockholders and one or more other persons, if in writing and signed by the parties thereto, whether or not such parties include all of the stockholders of the corporation, may provide that the shares held by such stockholders shall be voted under procedures set forth in said agreement.